UNITED STATES of America

v.

**Robert D. HAZEL, Appellant.**

**No. 90–3067.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 18, 1991.

Decided March 15, 1991.

Michael W. Kirk, (appointed by this Court) for appellant.

Eileen F. Sheehan, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John R. Fisher, Roy W. McLeese, III, James Cowles, and Elizabeth Danello, Asst. U.S. Attys., were on the brief, for appellee.

Before MIKVA, Chief Judge, and SENTELLE and HENDERSON, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

Concurring opinion filed by Chief Judge MIKVA.

SENTELLE, Circuit Judge:

This appeal concerns two separate questions under the United States Sentencing Guidelines: the interplay between the career offender and criminal history provisions, and the meaning of the acceptance of responsibility guideline. Appellant was labeled a career offender under § 4B1.1, but, because one of the two prior convictions could have been set aside at the time, the district court decided to depart downward on the Criminal History Category under § 4A1.3, without however adjusting Mr. Hazel's career offender status. The trial judge also rejected Hazel's request for a downward departure for acceptance of responsibility under § 3E1.1, pointing out

that Hazel had not accepted responsibility for "all" of the criminal conduct for which he was convicted (having admitted to only one of the three charges). We affirm the sentencing order.

## I. Background

Robert D. Hazel was convicted on three separate counts: (1) possession with intent to distribute cocaine; (2) possession of a firearm in connection with a drug trafficking offense; and (3) possession of a firearm by a felon. After finding that he was a career offender and rejecting an acceptance of responsibility claim, the trial judge sentenced Hazel to 270 months in prison. Since Count 2 carries a mandatory consecutive 60–month sentence, the issue here is the propriety of the 210–month sentence for the first and third counts.

The Presentence Report had calculated Hazel's Criminal History Category as V and Base Offense Level as 30, giving a range of 151–188 months. *See* Table, U.S. S.G. Chap. 5. After enhancing both of these levels (to Category VI and Offense Level 34) with a career offender classification under § 4B1.1 because of Hazel's two prior felonies, the report recommended a sentence of 262–327 months on the first and third counts. One of the prior felony convictions arose under the Federal Youth Corrections Act ("FYCA"), 18 U.S.C. § 5005, *repealed*, Pub.L. 98–473 (1984), Title II, § 218(a)(8). Hazel argued that, since he was entitled to have the conviction "set aside" after serving the entire sentence (the conviction was not, in fact, ever formally set aside), it should not have counted as a prior conviction under the career offender guideline. Hazel also sought a downward departure for acceptance of responsibility because he admitted to the gun possession charge.

The trial judge rejected Hazel's claim that he was not a career offender because a set-aside conviction would not qualify as an expunged conviction under § 4A1.2(j), note 10. The court did, however, agree to depart downward on the Criminal History Category (from VI to IV), recognizing that the FYCA conviction overrepresented Ha-

zel's criminal history. The trial judge took as his range 210–262 months (Category IV and Offense Level 34) and chose the lowest sentence (210 months). After sentencing Hazel, the judge remarked, "I think still if I had my discretion in this matter, I would not give you as long a sentence as I have. I find I'm compelled to by the guidelines, even departing downward, that I feel it's fully justified by the guidelines to depart downward, that I have recognized in your case."

Mr. Hazel is satisfied with the two-level reduction in the Criminal History Category, and does not challenge the career offender classification as such, but he wants the Offense Level dropped from 34 to 30 as if it had never been enhanced by the career offender classification.

## II. Analysis

### A. *Career Offender and Criminal History Guidelines*

Hazel argues that the trial judge violated § 4A1.3 in the way he fashioned the sentence and failed to explain adequately his reasons for imposing this sentence. According to Hazel, § 4A1.3 sets forth an adjustment methodology for downward departures when a criminal history is overstated, and the District Court should have applied it as well to the career offender provision (§ 4B1.1). Moreover, Hazel argues, the trial judge must explain how he is applying this methodology. This second argument is related to the first; a reviewing court can review effectively a departure only if it is made aware of the justifications for that departure. *See United States v. Dean*, 908 F.2d 1491, 1496 (10th Cir.1990).

However, neither of Hazel's claims is reviewable by this Court. The Sentencing Guidelines allow a defendant to appeal a sentencing decision if the sentence "(1) was imposed in violation of the law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; or (3) is greater than the sentence specified in the applicable guideline range...." 18 U.S.C. § 3742(a). Thus, under § 3742, a defen-

dant may challenge either the judge's application of the guidelines or the judge's departure from the guidelines if it is an upward departure. Parallel provisions apply to government appeals, enabling the government to challenge sentences imposed in violation of the law, as a result of incorrect application of the guidelines, or departing *downward* from the guidelines. 18 U.S.C. § 3742(b).

 Accordingly, under § 3742, we are able to review a trial judge's decision *to depart* from the guidelines, as that decision is made within the guidelines themselves. For example, in the present case, the trial judge's decision to depart is governed by § 4A1.3 of the guidelines. Therefore, we may require the trial judge to articulate the reasons for the departure to enable our review of that decision within the guidelines. *See United States v. Allen*, 898 F.2d 203, 204–05 (D.C.Cir.1990). Moreover, we may review the judge's decision to depart (or not to depart) where it is evident that the judge misunderstood the scope of his sentencing authority under the guidelines because that, too, would be a misapplication of the guidelines. *See United States v. Zine*, 906 F.2d 776 (D.C.Cir.1990); *United States v. Ortez*, 902 F.2d 61, 64 (D.C.Cir. 1990).

 However, beyond this limited area, we are not authorized to review the departure itself. It is true that there is no "rigid or technical" line between the guidelines and policy-based departures. *United States v. Franz*, 886 F.2d 973, 977 (7th Cir.1989). Nonetheless, we must account for the distinction made in § 3742 between incorrect applications of the guidelines and upward departures. If a departure decision could also be characterized as an incorrect application of the guidelines, there would be no need for § 3742(a)(3). *See United States v. Wright*, 895 F.2d 718, 721 (11th Cir.1990) ("[t]o permit a defendant to appeal a sentence which falls below the guideline range would make meaningless

the specificity of section 3742(a)(3) which permits a defendant to raise on appeal the district court's *upward* departure from the guideline range") (emphasis in original); *Franz*, 886 F.2d at 978 ("if we were to interpret section 3742(a)(2) to allow appeals for departure-related decisions as incorrect applications of the guidelines, we would render section 3742(a)(3) redundant").

Therefore, if we are to give an independent effect to § 3742(a)(3), we must interpret the extent of departure to be a question *outside* the application of the guidelines. For this reason, departure-related decisions are governed exclusively by § 3742(a)(3), authorizing defendants to appeal upward departures, and § 3742(b)(3), authorizing the government to appeal downward departures.[1] *Wright*, 895 F.2d at 720 & n. 2; *Franz*, 886 F.2d at 978. This interpretation is consistent with the Sentencing Commission's vision of judicial review of sentencing decisions.

> [T]he sentencing court must select a sentence from within the guideline range. If, however, a particular case presents atypical features, the Act allows the court to depart from the guidelines and sentence outside the prescribed range. In that case, the court must specify reasons for departure. 18 U.S.C. § 3553(b). If the court sentences within the guideline range, an appellate court may review the sentence to determine whether the guidelines were correctly applied. If the court departs from the guideline range, an appellate court may review the reasonableness of the departure. 18 U.S.C. § 3742. . . .

United States Sentencing Commission, *Guidelines Manual*, § 1.1 (Nov.1990).

Moreover, this interpretation is consistent with legislative intent to establish only "a limited practice of appellate review of sentences in the Federal criminal justice system." S. Rep. No. 225, 98th Cong., 2d Sess. 149 (1983), *reprinted in* 1984 U.S.

---

1. That is not to say, as our colleague interprets our position, *see* concurrence, *infra* at 426, that those reductions governed by the guidelines are non-reviewable. Thus, where the guidelines require a two-level reduction under § 3E1.1, a defendant could challenge a one-level reduction as an incorrect application of the guidelines. What we have before us in this case, in contrast, is a policy-based departure—a judge's decision to act *outside* the application of the guidelines.

Code Cong. and Admin. News 3182, 3332. Indeed, Congress made this distinction for the purpose of "avoid[ing] unnecessary appeals." S. Rep. No. 225 at 154, 1984 U.S. Code Cong. & Admin. News at 3337. The Senate Report explains:

> The limitations on both defendant and government appeal of sentences outside the guidelines based upon the size of the sentence imposed are further restrictions on the use of appellate review of sentences in order to avoid unnecessary appeals. Clearly, sentences at the bottom range are less likely to be abusive to defendants. The same applies to the government when sentences imposed approach the upper range of sentences recommended. The guidelines, therefore, provide a practical basis for distinguishing the cases where review is most needed from those where appeal would most likely be frivolous.

S. Rep. No. 225 at 154, 1984 U.S.Code Cong. & Admin. News at 3337. Thus, the legislative history supports a narrow interpretation of our authority to review sentencing decisions.

Finally, this Court has previously espoused a narrow interpretation, holding that "[d]ecisions not to depart downward from an applicable guideline range are generally reviewable only to the extent that they were imposed in violation of law or were imposed as a result of an incorrect application of the Sentencing Guidelines, 18 U.S.C. § 3742(a)." *Ortez,* 902 F.2d at 63. Thus, a trial judge may decide not to depart from the guidelines at all, without being subject to appellate review. This holding has been nearly universally adopted among the courts of appeals. *See, e.g., United States v. Wheelwright,* 918 F.2d 226, 231 (1st Cir.1990); *United States v. Colon,* 884 F.2d 1550, 1552–56 (2d Cir. 1989); *United States v. Denardi,* 892 F.2d 269, 272 (3d Cir.1989); *United States v. Bayerle,* 898 F.2d 28, 30–31 (4th Cir.1990); *United States v. Buenrostro,* 868 F.2d 135, 139 (5th Cir.1989); *United States v. Franz,* 886 F.2d 973, 981–82 (7th Cir.1989); *United States v. Evidente,* 894 F.2d 1000, 1003–04 (8th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990); *United States v. Morales,* 898 F.2d 99, 101–03 (9th Cir.1990); *United States v. Spedalieri,* 910 F.2d 707, 712 (10th Cir.1990); *United States v. Fossett,* 881 F.2d 976, 979 (11th Cir.1989).

Given these holdings, granting the defendant's request for review in this case would place us in the inconsistent position of being able to review the methodology and justifications for the degree of a downward departure, while leaving us unable to review a decision not to depart in the first instance. Thus, should we remand a downward departure decision to the trial court, the sentencing judge could easily resolve the methodology problem by providing for no departure at all—a decision we would be unable to review, and one that would place a defendant such as Hazel in a worse position than that in which he presently finds himself. *See Wright,* 895 F.2d at 722 ("It would be illogical to insulate from review a harsher sentence that fell within the guidelines while permitting the court of appeals to order further downward departures from a sentence already less than that provided for by the guidelines.") (citation omitted); *cf. also United States v. Pighetti,* 898 F.2d 3, 4 (1st Cir.1990) ("the extent of a departure, like the decision to depart itself, is essentially discretionary, ... and the statute affords no grounds for the *beneficiary* of a departure decision to complain that the deviation should have been greater") (citation omitted) (emphasis in original). Thus, the scope of our review over other sentencing decisions indicates that a narrow interpretation of § 3742 is in order.

In accordance with this interpretation of § 3742, it is inappropriate for us to review either the methodology or reasoning applied by Judge Hogan to reach the sentence at which he ultimately arrived. Although these claims would be proper subjects for review in the event of an appeal by the government, § 3742 affords us no authority to review these claims upon an appeal by the defendant.

■ Instead, we should address only Hazel's additional claim that the judge misunderstood the scope of his authority to de-

part from the guidelines. This alleged misunderstanding is evidenced by the trial judge's concluding statement that he would not have imposed as long a sentence if he had a greater degree of discretion. In *United States v. Baskin,* 886 F.2d 383 (D.C.Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1831, 108 L.Ed.2d 960 (1990), this Court reviewed a sentencing decision to determine whether the judge understood the scope of his authority where the trial judge stated, "I tell you freely, I would give you a significant sentence if it weren't for the Guidelines, but I wouldn't give you the sentence I feel I have to." 886 F.2d at 389. In *Baskin,* as in the present case, the trial judge implied that his discretion was constrained in a way that it actually was not.

Yet the trial judge's statement in the present case is not sufficient to compel our review in light of other statements the judge made in the course of sentencing. After imposing the sentence, the judge commented that the sentence "reflects the seriousness of the actions engaged in in this case," and "will assure the purposes for which we are sentencing you to deterrence and rehabilitation, as well as removing you from the streets for an extremely long period of time." Given these statements, "it would be unrealistic ... to suggest that the judge did not realize that he could depart if he wanted to or that he misunderstood what it meant to depart." *Zine,* 906 F.2d at 778. As the trial judge evinced sufficient understanding of the scope of his authority, we have no occasion to question his downward departure in the present case.

### B. *Acceptance of Responsibility*

■ Section 3E1.1(a) of the guidelines authorizes a two-level reduction in Offense Level if a defendant "clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Under the facts of this case, where Hazel only admitted at trial to possessing the firearm but refused to admit guilt on the two drug-related charges, the district court was correct in not giving the defendant a two-level reduction. Hazel complains of the trial judge's passing reference to *United States v. Gordon,* 895 F.2d 932, 936 (4th Cir.) ("a defendant must first accept responsibility for *all* of his criminal conduct") (emphasis added), *cert. denied,* —— U.S. ——, 111 S.Ct. 131, 112 L.Ed.2d 98 (1990). That gloss on § 3E1.1 may be somewhat extreme. The distinction between admission of *all* and nearly all might not present a significant difference. But here, the trial judge was not faced with a case where a defendant had accepted responsibility for all but a trivial element of the offenses charged. The trial judge was not grounding his decision on *Gordon's* specific construction of the guidelines but cited it only for the undoubtedly correct proposition that § 3E1.1 is to be construed narrowly. He then exercised his discretion in not granting any reduction given the facts in this case. Indeed, the factual context in *Gordon* was quite similar: "Gordon's claim that he was entitled to [credit for acceptance of responsibility] while at the same time denying the criminal conduct for which he was convicted by a jury borders on the frivolous." 895 F.2d at 937.

### III. CONCLUSION

The trial judge acted properly in exercising his limited discretion under the guidelines. Therefore, the district court's sentencing order is

*Affirmed.*

MIKVA, Chief Judge, concurring in part and concurring in judgment:

I write separately only to note my disagreement with the court's holding that we are unable to review Mr. Hazel's claim that the district court misapplied section 4A1.3 of the United States Sentencing Guidelines ("U.S.S.G.") in fashioning his sentence. According to Hazel, § 4A1.3 sets forth an adjustment methodology for downward departures when a criminal history is overstated, and the district court should have applied it as well to the career offender provision (§ 4B1.1). My colleagues decide that we cannot review this aspect of the sentence, characterizing Hazel's claim as

only quibbling with the degree of departure and challenging the reasonableness of the district court's decision not to depart downward even further. I think there was more to it than that.

This court's power to review sentencing decisions is spelled out in 18 U.S.C. § 3742. It is clear that "we have no jurisdiction to review the extent of a downward departure merely because the affected defendant is dissatisfied with the quantification of the district court's generosity." *United States v. Pighetti*, 898 F.2d 3, 4 (1st Cir.1990). But if the district court erred in construing the *scope* of its discretion to depart downward, that question would be reviewable. "[W]hile decisions *not to depart* from the sentence range prescribed by the Guidelines may be within the discretion of the trial judge, and therefore not subject to change by an appellate court, decisions apparently based upon a mistake of law or fact are reviewable under 18 U.S.C. § 3742(a)(2) (1988)." *United States v. Zine*, 906 F.2d 776, 777 (D.C.Cir.1990) (per curiam).

The majority decides that we cannot review Hazel's challenge in this case because of the limitation in § 3742(a)(3). There is no doubt that, once a threshold decision to depart has been made, a defendant is only allowed to challenge the *reasonableness* of a sentence in cases of upward departures under § 3742(a)(3). *See United States v. Wright*, 895 F.2d 718, 721 (11th Cir.1990) (observing that to allow review of reasonableness under subsection (a)(2) would nullify (a)(3)); *United States v. Franz*, 886 F.2d 973, 978–79 (7th Cir.1989) (holding that one could not automatically read every departure-related decision as an incorrect application of the guidelines without rendering § 3742(a)(3) redundant). But this feared redundancy would only exist if every challenge to a downward departure (including challenges to the reasonableness of the departure) were characterized as misapplications of the guidelines. No such redundancy appears if a limited subset of downward departures are reviewable as misapplications of the guidelines when a defendant contends that the trial judge failed to calculate the extent of the departure as required by the guidelines. In most instances, of course, the guidelines only provide guidance for when a departure is appropriate without adding guidance for the scope of departure (the so-called "policy-based" departures of U.S. S.G. Chapter 5 at issue in every decision cited by the majority). But, as explained below, § 4A1.3 also governs the method by which the scope of a departure is calculated, and a failure to abide by its terms would constitute a misapplication of the guidelines subject to appellate review.

While § 3742(a)(3) refers to a defendant's right to challenge the reasonableness of a departure, § 3742(a)(2) allows review for any misapplication of the guidelines. In *Wright*, "no allegation was made that the sentence was imposed in violation of law ... [and] there was no incorrect application of the guidelines." 895 F.2d at 722. Here we are not reviewing the downward departure for reasonableness but for an allegedly improper application of the guidelines. We could surely entertain a challenge by a defendant who was found to have accepted responsibility as defined in § 3E1.1 of the Guidelines but was then only given a one-level reduction when the guidelines require a two-level reduction. Although such adjustments appear to be "departure-related," Maj. Op. at 423, the defendant's challenge on appeal would allege a misapplication of the guidelines reviewable under § 3742(a)(2). The majority cannot mean that, once a district court has given a defendant some benefit in sentencing, the defendant is never able to challenge the sentence because of § 3742(a)(3).

Hazel has argued all along that his sentence was imposed through an incorrect application of the sentencing guidelines, specifically § 4A1.3, a claim that we can clearly review under § 3742(a)(2). Section 4A1.3 governs not only when but also *how* a departure should be calculated:

> In considering a departure under this provision, the Commission intends that the court use, as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable. For example, if the court

concludes that the defendant's criminal history category of III significantly underrepresents the seriousness of the defendant's criminal history, and that ... [it] most closely resembles that of most defendants with a Category IV criminal history, the court should look to the guideline range specified for a defendant with a Category IV criminal history to guide its departure.

U.S.S.G. § 4A1.3. Although only a Policy Statement, this court has held that § 4A1.3 mandates that a trial judge "should ascertain whether *adjustment within the Guidelines* is adequate." *United States v. Allen*, 898 F.2d 203, 204 (D.C.Cir.1990) (emphasis added). Section 4A1.3, by dictating how a district court should calculate the scope of a departure, is fundamentally unlike the other departure sections in the Guidelines which leave the degree of a departure entirely to the district court's discretion. *See* U.S.S.G. §§ 5K1.1 (substantial assistance), 5K2.0 (other factors not considered by the Commission). Indeed, § 4A1.3 is more akin to the adjustments specified in Chapter 3 of the Guidelines which provide for automatic departures in certain circumstances.

Although I think we can review Hazel's claim, I conclude that it too lacks merit. Notwithstanding Hazel's contention that the district court "threw away the guidelines" in sentencing, the trial judge appears to have been quite precise in his decision. Both the Criminal History Category and the Offense Level were enhanced by the finding that Hazel technically qualified as a career offender, but the district court decided to eliminate the enhancement in Category. By asking that the Offense Level be reduced as well, Hazel wants the departure counted twice. But there is no general requirement for symmetry in departures along both axes of the Sentencing Table. For instance, the Tenth Circuit recently held that the guidelines must be consulted "to arrive at the most appropriate offense level *or* criminal history category, as applicable." *United States v. St. Julian*, 922 F.2d 563, 569 (10th Cir.1990) (emphasis added).

Hazel also contends that the district court failed to explain why the reasons justifying departure from Category VI to Category IV did not also apply to a reduction of Offense Level from 34 to 30. We have held that a "court should state definitively its reasons for [a § 4A1.3] determination." *Allen*, 898 F.2d at 204–05 (citing decisions from other circuits that had remanded sentences when the trial judge inexplicably "skipped" over possible other Categories in departing from the Guidelines). Here, the district court recognized that the FYCA conviction had "already [been] taken into account" in the career offender classification, but evidently felt that Hazel should not suffer the double-whammy that results when both Category and Level are enhanced by that classification and chose to depart downward on the Criminal History Category alone. *Cf. United States v. Gardner*, 905 F.2d 1432, 1438 (10th Cir.) (observing that district courts may "articulate the objective criteria used as a basis for" the sentence imposed via "an extension of or extrapolation from other guideline levels or principles"), *cert. granted,* —— U.S. ——, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990). The trial judge adequately explained why he thought a § 4A1.3 departure was appropriate here and decided to reduce the Category by two levels but not alter the Offense Level.

Therefore, although I disagree with the majority's belief that we are unable to review the merits of Hazel's § 4A1.3 claim, I would nonetheless affirm the sentence.