**UNITED STATES of America, Appellee,**

v.

**Gail KNAPP, Appellant.**

**No. 91–1507.**

United States Court of Appeals,
Eighth Circuit.

Submitted Aug. 27, 1991.

Decided Jan. 30, 1992.

Rehearing Denied March 30, 1992.

Victor C. Strauss, Jr., St. Louis, Mo., for appellant.

Mark W. Eggert, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before JOHN R. GIBSON, Circuit Judge, HEANEY and BRIGHT, Senior Circuit Judges.

JOHN R. GIBSON, Circuit Judge.

Gail Knapp appeals her sentence of 87 months imposed upon her guilty plea to conspiring to cultivate and distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(vii), and 846 (1988). Knapp argues that: (1) the district court erred by not supporting her sentence with an individualized statement of reasons; (2) the district court erred by not considering required statutory factors when imposing her sentence; (3) these errors violated her constitutional rights to due process and equal protection; and (4) the sentence constituted cruel and unusual punishment in violation of the eighth amendment. We affirm the judgment of the district court.[1]

On September 10, 1990, federal and state law enforcement officers arrested Knapp and four others while executing a series of simultaneous search warrants at various locations throughout eastern Missouri where marijuana was being grown. Officers seized approximately 48,000 marijuana

1. The Honorable John F. Nangle, Senior United States District Judge for the Eastern District of Missouri.

plants and 400 pounds of processed marijuana.

On November 26, 1990, Knapp pled guilty to a one count indictment alleging that she and her four co-defendants conspired to cultivate and distribute marijuana.

Co-defendant William M. Davis, who launched the conspiracy in 1986, owned all of the properties, except one, where the marijuana was grown. Three of the co-defendants—Knapp, Willard J. Rhodes and James Dixon—resided at various of Davis' properties. In exchange for paying no rent, they served as the "caretaker" of the property at which they resided and were responsible for irrigating and fertilizing the marijuana and controlling the weeds. They also were to receive a percentage of the profits from the crop harvested on their property. Davis directed the enterprise through co-defendant Richard L. Samuelson, who supervised the caretakers' activities.

Rhodes and Dixon joined the conspiracy in March 1990 and Knapp joined three months later in June. Of the approximately 48,000 marijuana plants seized, 794 were confiscated from the property in Montgomery County, Missouri, where Knapp resided.

The presentence report identified Knapp as the least culpable of the five co-defendants. Based on the total amount of marijuana seized at all of the properties searched on September 10, the PSR set Knapp's base offense level under the United States Sentencing Guidelines at 38. Subtracting two levels for acceptance of responsibility, the PSR recommended a total offense level of 36.

At the sentencing hearing for the five co-defendants, the government filed five motions for downward departure under United States Sentencing Commission, *Guidelines Manual*, § 5K1.1 (Nov.1990). The district court acted on the government's motions and reduced the offense level for all five. The court explained:

> In any event, I do believe there has been substantial assistance in the investigation of this matter and other matters rendered by all of the defendants here.

And that justifies considering a sentence below the guidelines, and if need be, below the statutory required minimum sentence.

And I do give substantial weight to the Government's evaluation ... of the extent of the defendants' assistance.

After reducing Knapp's offense level from 36 to 29, the court sentenced her to 87 months imprisonment followed by five years of supervised release. The court acknowledged that Knapp joined the conspiracy later than the others and participated for only three months, but found that she and the other two caretakers "knew enough about what was going on to be chargeable with the entirety."

I.

Knapp first argues that her sentence is unlawful because the district court did not support it with an individualized statement of reasons. She alleges that the court made only a "general, conclusory, cursory" statement that applied to the defendants as a group.

The government contends that we have no jurisdiction to consider this appeal because Knapp is simply arguing that the extent of the downward departure was not sufficient. We have held that a defendant's challenge to the extent of the district court's downward departure from the guidelines is unreviewable. *United States v. Sharp*, 931 F.2d 1310, 1311 (8th Cir. 1991); *United States v. Left Hand Bull*, 901 F.2d 647, 650 (8th Cir.1990). We read Knapp's argument differently, however. Knapp is not directly challenging the extent of the downward departure; rather, she asserts that the district court imposed the sentence "in violation of the law" by failing to state the reasons for the sentence as required by 18 U.S.C. § 3553(c) (1988).

In *United States v. Hazel*, 928 F.2d 420 (D.C.Cir.1991), the defendant similarly argued that the district court did not adequately state its reasons for imposing sentence, which included a downward departure. *Id.* at 422. The District of Columbia Circuit held that just as the appeals court generally could not review a defendant's

challenge to a district court's decision not to depart downward in the first instance, it also lacked jurisdiction to review the district court's "methodology or reasoning" in choosing to make a downward departure. *Id.* at 424.

■ *Hazel* is persuasive and this could end our inquiry. We have reviewed the transcript of the sentencing hearing, however, and conclude that district court did in fact give an adequate statement of reasons as required by 18 U.S.C. § 3553(c). While the district court did not address each defendant individually, the court stated at length its reasons for granting downward departures to all five co-defendants.

The district court acknowledged the substantial assistance all five defendants gave the government and their lack of a prior criminal record. Balancing those mitigating factors, the court observed that the defendants had cultivated 48,000 marijuana plants with the intent to distribute and that each had knowledge of the extent of the conspiracy. Nonetheless, in justifying the lesser sentences given to the three caretakers, the court stated that while they may have been legally chargeable with knowledge of the extent of the conspiracy, the "enormity" of the enterprise may not have been fully known to them. The court also stated that each sentence addressed the objectives of punishment, general deterrence, and incapacitation.

■ Knapp cites to no case requiring the court to give an individualized statement of reasons when the same reasons may apply to two or more co-defendants. Moreover, we see nothing in section 3553(c) that suggests such a requirement. We thus conclude that the district court supported Knapp's sentence with an adequate statement of reasons.

## II.

Knapp next argues that because the court did not adequately state its reasons for imposing sentence, it never properly considered the factors enumerated in 18 U.S.C. § 3553(a) (1988). In applying the sentencing guidelines, the sentencing court must consider such factors as the nature and circumstances of the offense; the his-

tory and characteristics of the defendant; the purposes of punishment, general deterrence, and incapacitation of the defendant; correctional objectives; the applicable sentencing range under the guidelines; the need to avoid unwarranted sentencing disparities among defendants who are guilty of similar conduct and have similar records; and the need to provide restitution. *Id.*

Knapp primarily relies on *United States v. Parrado,* 911 F.2d 1567, 1572 (11th Cir. 1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1005, 112 L.Ed.2d 1088 (1991), which states that a sentencing court should be "mindful" of the section 3553(a) factors when explaining the reasons for imposing sentence, *id.* at 1573, and should "tailor its comments to show that the sentence imposed is appropriate" in light of the statutory factors. *Id.* at 1572. *Parrado* also states, however, that a sentencing court need not " 'incant the specific language used in the guidelines' " nor state "that a particular factor is not applicable in a particular case." *Id.*

■ The sentencing transcript demonstrates that the district court adequately addressed the factors listed in section 3553(a). The district court discussed the scope and objectives of the conspiracy; the defendants' lack of prior criminal records; the objectives of punishment, general deterrence and incapacitation; the applicable guideline ranges and the justification for downward departures; the lesser culpability of the three caretakers; and the inability of four of the defendants to pay a fine.

In short, we see nothing in the transcript that would cause us to conclude that the district court did not fully consider the factors of section 3553(a).

## III.

Knapp next argues that because the district court failed to give an individualized statement of reasons for imposing her sentence and failed to properly consider the statutory factors, the sentence violates her constitutional rights to due process and equal protection.

In light of our holdings on the first two issues raised by Knapp, we need not address this argument.

## IV.

■ Finally, Knapp argues that her 87–month sentence constitutes cruel and unusual punishment in violation of the eighth amendment because it is disproportionate to her offense conduct and background, and because the other caretakers who had a longer involvement with the conspiracy received the same sentence. In light of the substantial downward departure the district court granted, we conclude that this argument simply lacks merit. *See United States v. Murphy*, 899 F.2d 714, 719 (8th Cir.1990) (a sentence within statutory limits is generally not subject to review under the eighth amendment); *Harmelin v. Michigan*, ⎯ U.S. ⎯, 111 S.Ct. 2680, 2701, 115 L.Ed.2d 836 (1991) (sentence of life imprisonment without possibility of parole for first-time offender convicted of possessing 672 grams of cocaine did not violate eighth amendment).

For the foregoing reasons, we affirm the judgment of the district court.

BRIGHT, Senior Circuit Judge, concurring separately.

I write separately in concurrence and comment on appropriate sentences for minimal and latecomer participants in a drug conspiracy.

As the opinion of the court observes, here the prosecutor moved for a downward departure from the offense level of 36, as calculated by the probation officer (base level of 38 under Sentencing Guidelines § 2D1.1 (30,000 to 100,000 kilograms of marijuana, less a two-level decrease for acceptance of responsibility)). The offense level related to the whole conspiracy, which covered a period of several years and the growing of marijuana on several separate farm parcels. Federal and state law enforcement officers searched these parcels and seized 48,000 plants, plus 400 pounds of marijuana. The guidelines call for a very heavy sentence of 188 to 235 months (15⅔ years to 19 years, 7 months), even for a first-time offender such as Gail Knapp.

Here, the district court properly granted Gail Knapp a reduction. Ms. Knapp had joined the conspiracy for only about three months, from June 1990 until the conspiracy ended on September 10, 1990. Of the total seizure from all farms of 48,000 plants, the Government seized 794 marijuana plants from the farmland on which she resided. Three other conspirators had participated in the venture for six months, since March 1990, and a fourth for more than three years (since 1986).

The district court, in sentencing Ms. Knapp, reduced her base level from 36 to 29, which called for a guideline sentence of 87 to 108 months, and the district court accepted the low end of the guidelines in sentencing Ms. Knapp to 87 months (7 years and 3 months) without parole.

That sentence still amounts to a stiff penalty for a first-time offender participant, playing a minor role in a conspiracy, who did not personally engage in the overall cultivation of the 48,000 plants found on all the farm parcels.

The district court, however, in the sentencing hearing made this cryptic comment, without elaboration, that the caretakers on each parcel of land, including Knapp, "knew enough about what was going on to be chargeable with the entirety."

The appellant has not directly challenged this observation by the district court, nor the probation officer's calculation of the base offense level of 36 by attributing all the marijuana found to each co-conspirator. For this reason, I join the affirmance by this court.

Nevertheless, for guidance to probation officers and district judges who calculate sentences for latecomers or minimal participants in a drug conspiracy, I call attention to *United States v. Edwards*, 945 F.2d 1387 (7th Cir.1991), which holds that a latecomer or minimal participant will not necessarily be chargeable for drug quantities attributed to other conspirators. In that case, the court remanded for resentencing the cases of some co-conspirators in a large-scale heroin distribution scheme, requiring the sentencing court to give individual consideration to those defendants' scope of involvement in the conspiracy and the amount of drugs for which they could be held responsible.

The court outlined the problem as follows:

We are faced in this case with the conundrum of applying the concept of reasonable foreseeability to a drug conspiracy that spanned approximately three years and that included numerous supplier-wholesalers, middle-managers, and seller-retailers. In particular, the concept of foreseeability (a forward-looking concept) must be turned around 180 degrees and be applied to the conduct of co-conspirators occurring before the entry of a particular defendant into the conspiracy.

*Edwards*, 945 F.2d at 1393.

The court, based on the guidelines and parallel case law, concluded that "there are two limiting factors on the use of conduct in calculating the sentence of a conspiracy defendant. The conduct must be 1) in furtherance of the conspiracy and 2) reasonably foreseeable to the defendant." *Id.* at 1392. Finally, the court observed: "Of particular importance in determining the level of commitment on the part of an individual defendant is the scope of the agreement between that defendant and his co-conspirators." *Id.* at 1394.

In remanding, the court held that "[t]he district court erred in not considering the scope of the agreement each defendant here had with his co-conspirators." *Id.* at 1395. Its opinion observed further as to some individuals:

The judge may sentence a late entrant on the basis of all the drugs distributed only if the earlier distributions occurred as part of the conspiracy to which the defendant agreed. A defendant who enters the conspiracy in its final stages, who was not linked to the earlier transactions or with the co-conspirators in any substantial way, and who bought or sold an amount of drugs that was minuscule in comparison to the 10 kilograms or more of heroin distributed may not be held responsible for all of the heroin distributed over the three-year period. Furthermore, he may not be sentenced according to all of the heroin distributed after he agreed to join the conspiracy if in agreeing to conspire, he reasonably foresaw a lesser amount. Applying these limiting principles to several of the defendants requires a remand of their cases for resentencing so that the base offense level may be recalculated.

*Id.* at 1397. *See also United States v. Matthews*, 942 F.2d 779, 784–85 (10th Cir. 1991) (conspiracy sentence may only be based upon quantities of drug that late-entering conspirator knew or should have known the conspiracy distributed within scope of late-entrant's agreement); *United States v. North*, 900 F.2d 131, 133–34 (8th Cir.1990) (defendant only responsible for activities within scope of limited conspiracy); U.S.S.G. § 1B1.3, comment. (n. 1(e)).

The limiting principles enunciated in *Edwards* would seem important in the imposition of fair sentences on individuals charged as drug conspirators, but who individually play a relatively minor role in the crime.

The principles of the *Edwards* case, if called to the attention of the sentencing judge, may have justified a lesser sentence for Gail Knapp than that imposed on any of the other co-conspirators.