990 F.2d 1377
 301 U.S.App.D.C. 107
 NOTICE: D.C. Circuit Local Rule 11(c) states that unpublished orders, judgments, and explanatory memoranda may not be cited as precedents, but counsel may refer to unpublished dispositions when the binding or preclusive effect of the disposition, rather than its quality as precedent, is relevant.
UNITED STATES of America
v.
William Austin GREEN, Appellant.
 Nos. 91-3200, 92-3005.
 United States Court of Appeals, District of Columbia Circuit.
 March 23, 1993.
 
 Before: MIKVA, Chief Judge, SILBERMAN and RANDOLPH, Circuit Judges.
 JUDGMENT
 PER CURIAM.
 
 
 1
 These appeals were considered on the record from the United States District Court for the District of Columbia and on the briefs and oral arguments of counsel. The issues have been accorded full consideration by the Court and occasion no need for a published opinion. See D.C.Cir. Rule 14(c). For the reasons stated in the accompanying memorandum, it is
 
 
 2
 ORDERED AND ADJUDGED by this Court that in Nos. 91-3200 and 92-3005, the judgment of the district court is affirmed.
 
 
 3
 The Clerk is directed to withhold issuance of the mandate herein until seven (7) days after disposition of any timely petition for rehearing. See D.C.Cir. Rule 15.
 
 MEMORANDUM
 
 4
 William Austin Green and Rita Shirley Peaks were found guilty on all eight counts of a superseding indictment brought in connection with the abduction of four year-old Marqweta Nicole Butler ("Nicole"). Mr. Green and Ms. Peaks were both charged with conspiracy to kidnap, in violation of 18 U.S.C. §§ 371 and 1201; kidnapping, in violation of 18 U.S.C. §§ 1201 and 1202; assault with intent to kidnap and aiding and abetting, in violation of D.C. Code §§ 22-503 and 22-105; and use of a firearm during the violent crime of kidnapping, in violation of 18 U.S.C. §§ 924(c)(1). Mr. Green alone was charged with transporting a firearm in interstate commerce, in violation of 18 U.S.C. 922(n); tampering with a witness, in violation of 18 U.S.C. § 1512(b)(1); and retaliating against a witness, in violation of 18 U.S.C. § 1513. Ms. Peaks alone was charged with robbery and aiding and abetting, in violation of D.C. Code §§ 22-2901 and 22-105.
 
 
 5
 On October 31, 1990, Nicole was abducted from her natural mother and legal custodian, Linda Butler. Ms. Butler had married Nicole's father, Carl Butler, in 1987, shortly after Nicole's birth. The Butlers subsequently separated, but were never divorced. Nonetheless, Mr. Butler and Ms. Peaks were later married in 1989, and were living together in Arizona at the time of the abduction.
 
 
 6
 The events leading up to the kidnapping began with a visit by Ms. Peaks to the D.C. Bureau of Vital Statistics to obtain illicitly a copy of Ms. Butler's birth certificate. Ms. Peaks intended to use the birth certificate to acquire a driver's license with her picture and Ms. Butler's name. Ms. Peaks went to the Bureau with Gwen Johnson and Robin Clinton, who both pled guilty to attempted robbery as part of plea-bargain agreements with the government. Ms. Peaks obtained the certificate by directing Ms. Johnson to pose as Ms. Butler. Driving from the Bureau, Ms. Peaks saw Ms. Butler on the street and stopped the car. Ms. Clinton and Ms. Johnson attacked Ms. Butler in an attempt to steal her purse and driver's license. The purse was indeed stolen, and Ms. Butler later identified Ms. Johnson and Ms. Clinton as the robbers.
 
 
 7
 Ms. Peaks returned home to Arizona, but made a second trip to Washington on October 31, 1990. That night, as Ms. Butler was taking Nicole trick-or-treating, Mr. Green grabbed Nicole and jumped into an awaiting car. Ms. Peaks drove away with Mr. Green and Nicole. The three were later seen at the home of Mr. Green's mother. Three witnesses saw Mr. Green and Ms. Peaks with guns. A fourth witness overhead Ms. Peaks ask Mr. Green if he had "the other black gun." After leaving the mother's home, Ms. Peaks drove with Mr. Green and Nicole to a friend's to get a ride to the bus station after she returned her rented car. The friend summoned the police, but Ms. Peaks was able to drive away and elude them.
 
 
 8
 Ms. Peaks eventually obtained a ride for herself, Mr. Green, and Nicole from Ernie Davis and Jerome Diggs. Mr. Green later forced Mr. Davis from the car, and the four remaining passengers started a drive across the country. Kansas police pulled over the car and arrested Mr. Green for possession of a firearm. Ms. Peaks, Mr. Diggs, and Nicole were allowed to continue their trip after Ms. Peaks presented false identification indicating that she was Ms. Butler. When they reached Denver, Mr. Diggs called his family and revealed their location. Ms. Peaks fled with Nicole and found shelter and a job in Denver. She was eventually captured by the F.B.I. on November 9, 1990.
 
 
 9
 When Mr. Green and Mr. Davis were together at the D.C. jail awaiting trial, Mr. Green told Mr. Davis to lie to the grand jury, and he complied. Mr. Green later accused Mr. Davis of "snitching," threatened to kill him, and started a fight with him. Mr. Davis then returned to the grand jury a second time and disclosed Mr. Green's role in the kidnapping. At trial, Mr. Green did not present any defense witnesses. Ms. Peaks testified as the sole witness in her defense. She admitted coming to Washington to kidnap Nicole, asking Mr. Green to help her, driving the getaway car, and also corroborated some of the other testimony. She denied speaking with Mr. Green about a gun or brandishing a gun when Mr. Davis was forced out of his car.
 
 
 10
 Mr. Green and Ms. Peaks raise five issues on appeal. Both appellants argue that the district court erred in denying a motion for mistrial based on allegedly improper rebuttal argument by the prosecutor. They argue that the prosecutor suggested that the defendants must be guilty because two co-conspirators had already pled guilty. This argument must be rejected.
 
 
 11
 The prosecutor made the following statements in rebuttal argument:
 
 
 12
 We would ask you, like--like Gwen Johnson and Robin Clinton have done, they have done ugly things in their life, and they have come in, and they have told you about them, and they stood in front of you, and they have admitted them, and they have pled guilty to offenses in this case.
 
 
 13
 We would ask you, ladies and gentlemen, to make Miss Peaks and to make Mr. Green stand up and for you to tell them they can't get away with this.
 
 
 14
 Trial Transcript IIIE at 79. The parties agree that a co-defendant's guilty plea may not be used as substantive evidence of a defendant's guilt. See United States v. Tarantino, 846 F.2d 1384, 1404-05 (D.C.Cir.1988). The government argues that the challenged argument did not constitute such improper use, but rather served legitimate purposes: to bolster the credibility of Ms. Johnson and Ms. Clinton, and to ask the jury to hold the defendants accountable. The government also contends that the argument was not substantially prejudicial in any case.
 
 
 15
 This court has stated that in considering whether to reverse a conviction on the basis of improper summation, courts should weigh the magnitude of the potential prejudice, the magnitude of the prosecutorial misconduct, and the curative measures taken. See United States v. North, 910 F.2d 843, 895 (D.C.Cir.1990); United States v. Monaghan, 741 F.2d 1434, 1443 (D.C.Cir.1984). We share the district court's concern that the prosecutor's comments could have been construed to suggest that the appellants must be guilty because Ms. Johnson and Ms. Clinton pled guilty. And we are troubled by impromptu arguments that tread dangerously close to improper conduct in the name of spontaneity and rhetorical flourish. However, we also agree with the district court that the prosecutor's comment was so obscure that it is doubtful that the jury took away any improper inference. More importantly, the facts recounted in this memorandum were virtually undisputed at trial and present overwhelming evidence of guilt. Thus, despite the fact that the district court took no curative measures, we are convinced that the jury's verdict was unaffected by the prosecutor's comments.
 
 
 16
 Ms. Peaks alone raises four additional issues. She first argues that impeachment cross-examination of Ms. Butler regarding bias was unconstitutionally restricted. Ms. Peaks sought to establish that Ms. Butler was biased against Ms. Peaks by bringing out on cross-examination that Ms. Butler, who was suffering from AIDS, bit Ms. Peaks on the neck on May 22, 1989. The crux of the bias argument was that Ms. Butler was battling Ms. Peaks over the affections of Mr. Butler.
 
 
 17
 The government concedes, and the district court recognized, that bias is always relevant to witness credibility. Tinker v. United States, 417 F.2d 542, 544 (D.C.Cir.1969); Wynn v. United States, 397 F.2d 621, 623 (D.C.Cir.1969); Villaroman v. United States, 184 F.2d 261, 262 (D.C.Cir.1950). However, the district court also has the discretion to control evidence regarding bias or any other issue, and the court did not abuse its discretion by ruling that the evidence of the alleged bite should be excluded because its probative value was substantially outweighed by the risk of prejudice. The probative value of the bias evidence was minimal given the limited scope of Ms. Butler's testimony, the enormous amount of corroborating evidence, and the admissions of Ms. Peaks herself. More importantly, the evidence of AIDS and the bite was far more relevant to the contention that Ms. Peaks was attempting to "rescue" Nicole from possible injury at the hands of Ms. Butler. This defense, along with a defense of duress, were properly disallowed by the district court because of a lack of legal basis. The admission of the bias evidence presented a significant risk that the jury would be confused into considering some sort of "rescue" defense. Thus, the district court did not err in refusing to allow the cross-examination.
 
 
 18
 Ms. Peaks next maintains that the evidence was insufficient to sustain a guilty verdict on the charge of use of a firearm during kidnapping, and that the district court erred in denying her motion for acquittal notwithstanding the verdict. Ms. Peaks does point to numerous inconsistencies in the testimony regarding the spotting of a gun at the home of Mr. Green's mother. However, she cannot successfully maintain that no jury could have reasonably credited enough of the testimony to find her guilty. The testimony regarding the use of a gun to keep Mr. Diggs in the car during the trip west is uncontradicted. Ms. Peaks argues that this must be false testimony because the Kansas City police did not find a gun in Ms. Peak's purse (although they did retrieve one gun from the car and arrest Mr. Green for possession). However, the government points out that Ms. Peaks was not searched, and that the "colorful bag" in which the gun was spotted at Mr. Green's mother's home also may not have been searched. In any case, even if Ms. Peaks had been searched to no avail by the Kansas police, the jury could have credited the evidence that she had a gun at other times during the commission of the kidnapping. Despite the inconsistencies in the testimony, Ms. Peaks cannot meet the extremely demanding burden of demonstrating that the verdict is not supported by sufficient evidence.
 
 
 19
 Ms. Peaks also objects to upward adjustments in her offense level under the Sentencing Guidelines for her role in the kidnapping, the vulnerability of the victim, and her obstruction of justice. The district court assessed an upward adjustment for Ms. Peaks's "supervisory" role in the kidnapping under U.S.S.G. § 3B1.1(a), which provides for a four-level increase if "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." Ms. Peaks argues that it was Mr. Butler who was the leader or organizer of the kidnapping and related offenses, and that the probation report incorrectly concluded that five or more participants were involved in the conspiracy.
 
 
 20
 With respect to Ms. Peaks's "supervisory role," the district court found that even if Ms. Peaks were motivated in part by Mr. Butler, she was also the leader of other people. Ms. Peaks undisputedly enlisted aid from a number of individuals, and the Sentencing Guidelines do not appear to contemplate a single leader. Even if Mr. Butler were the mastermind of the kidnapping, Ms. Peaks could nonetheless be considered "an organizer or leader." U.S.S.G. § 3B1.1(a) (emphasis added). As for the number of participants, Ms. Peaks makes a plausible argument that less than five of the people involved in the kidnapping scheme were criminally responsible. See U.S.S.G. § 3B1.1 comment. (n. 1) ("A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted...."). However, the kidnapping plan was certainly "otherwise extensive" within the meaning of the Guidelines. See U.S.S.G. § 3B1.1 comment. (n. 2) ("In assessing whether an organization is 'otherwise extensive,' all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.") The district court did not err in concluding that Ms. Peaks was a leader of a kidnapping scheme that involved five participants or was otherwise extensive.
 
 
 21
 The district court imposed an additional two-level enhancement for obstruction of justice under U.S.S.G. § 3C1.1. The court ruled that Ms. Peaks obstructed justice in the way she eluded the police in the Washington area, in Kansas City, and in Denver. Her presentation of false identification to the Kansas City police is alone sufficient to justify the enhancement. See U.S.S.G. § 3C1.1 comment. (n. 3(g)) (obstruction of justice in "providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense"). There is no basis for Ms. Peaks's argument that the offense level for kidnapping somehow incorporates attempts to elude capture by making false statements to the police.
 
 
 22
 Finally, Ms. Peaks argues that she was entitled to a downward departure because of a mitigating circumstance that the Sentencing Commission did not consider: kidnapping involving family relations. See U.S.S.G. § 5K2.0 (court may depart from the sentencing range if a mitigating factor exists that was not adequately considered by the Commission). Ms. Peaks appears to be correct that this factor was not considered by the Commission. However, this court may only review a refusal to depart from the Sentencing Guidelines when the judge misunderstood the scope of his sentencing authority. United States v. Hazel, 928 F.2d 420, 423 (D.C.Cir.1991); United States v. Lopez, 938 F.2d 1293, 1296 (D.C.Cir.1991). The district court clearly understood that it had the discretion to depart from the sentencing range, but merely declined to do so. The decision is therefore unreviewable.
 
 
 23
 We affirm the convictions and sentence.