USCA1 Opinion

 

 November 22, 1994 UNITED STATES COURT OF APPEALS UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT FOR THE FIRST CIRCUIT ____________________ No. 93-2120 UNITED STATES OF AMERICA, Appellee, v. WILLIAM J. DeCOSTA, Defendant, Appellant. ____________________ ERRATA SHEET ERRATA SHEET The opinion of this court issued on October 7, 1994, is hereby amended as follows: Delete the last two sentences of the first full paragraph on page ten which begins with "As for the . . . ." and ends with "is worth pondering." and replace the sentences with the following two sentences: "As for the government, zeal is ordinarily to be admired in a prosector but it can be overdone. Accordingly, we are comforted to learn that prior to prosecution DeCosta was offered an opportunity to participate in the pretrial diversion program-- even though for reasons not developed in the record no agreement was ultimately reached." UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-2120 UNITED STATES OF AMERICA, Appellee, v. WILLIAM J. DeCOSTA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Mark L. Wolf, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ Frank P. Marchetti, by Appointment of the Court, for appellant. __________________ Nadine Pellegrini, Assistant United States Attorney, with whom __________________ Donald K. Stern, United States Attorney, was on brief for the United _______________ States. ____________________ October 7, 1994 ____________________ BOUDIN, Circuit Judge. As part of a postal service ______________ "sting," postal inspectors placed an advertisement concerning child pornography in a local publication. William DeCosta was foolish enough to respond. In correspondence with an undercover postal inspector, DeCosta expressed an interest in receiving such material. In February 1989, DeCosta mailed to the undercover agent four photographs depicting young girls in sexually explicit poses. Thereafter he was indicted. In December 1992, DeCosta pleaded guilty to a violation of 18 U.S.C. 2252(a)(2) which relates to the mailing of child pornography. Prior to the plea, the government (in connection with DeCosta's release conditions) urged that DeCosta might be dangerous to children, offering the testimony of a psychologist who had examined DeCosta. The district judge had DeCosta examined by another expert and accepted that expert's conclusion that DeCosta posed no such danger. The guideline sentence for DeCosta's offense, given his lack of any criminal history, was 12 to 18 months imprisonment. U.S.S.G. 2G2.2 (1989). (The district court utilized the November 1989 manual because a subsequent increase in the guideline range posed an ex post facto _______________ problem; all citations below are to the 1989 manual.) Between the time of the guilty plea and the sentencing hearing on August 12, 1993, the district court energetically -2- -2- explored the options available, including in-prison treatment. DeCosta himself was receiving out-patient counseling at the time of the sentencing hearing. At the sentencing hearing on August 12, 1993, the district judge asked the prosecutor whether the U.S. Attorney's office would consider an alternative to imprisonment; it appears from the transcript that there had been earlier, unsuccessful efforts along this line. The prosecutor said that the matter had been discussed in her office and that pre-trial diversion was not agreeable to the government. In fact, the prosecutor urged imprisonment for 18 months, the maximum period allowed under the guidelines. At the hearing, there was testimony from the expert who had previously concluded that DeCosta posed no physical danger to anyone. DeCosta's attorney urged the court to impose probation but provided no explanation as to how the court might be empowered to do so. Counsel did advert to DeCosta's present out-patient treatment, his somewhat limited intelligence and the fact that he had not taken the pictures he had mailed. It was also pointed out that although DeCosta had lost his job as a security guard, he had found new employment to support his family. After describing DeCosta's current out-patient treatment, his counsel said that he (DeCosta) "has improved tremendously" in his attitude and outlook. DeCosta's wife, -3- -3- said counsel, wants him home. When defense counsel said that the court "should look further, to see if there's some way to give this man probation," the district court pointed out that it had urged counsel to help it to distinguish several cases that appeared to limit the court's ability to depart from the guidelines. The court then said that DeCosta could receive treatment at the Buttner, North Carolina, facility if the 12 month minimum sentence were imposed. DeCosta's counsel replied: I think the repercussions of that would be far greater than what we've had up to this point, where the children [DeCosta's children] have suffered, the family has suffered, the publicity has hurt them. He's lost his job, his income has suffered. Now, the family will be on welfare and I don't think they'll ever get back together, if this man goes away for a year. . . . And that would be even sadder than what we've got today. After a further colloquy, including the prosecutor's rejection of pretrial diversion, the court sentenced DeCosta to one year of imprisonment, three years of supervised release including mental health counseling as directed, and the mandatory $50 special assessment. The court recommended to the Bureau of Prisons that the sentence be served at Buttner with appropriate treatment. Thereafter, the district court stayed the sentence pending this appeal. On appeal, DeCosta's central argument concerns the district court failure to depart from the guidelines range -4- -4- and sentence DeCosta to probation or something less than one year. It is settled law that a sentencing court is entitled to depart in cases that fall outside the "heartland" contemplated by the guidelines. See United States v. Rivera, ___ _____________ ______ 994 F.2d 942, 946-47 (1st Cir. 1993). Both the statute and the guidelines permit departures where the court finds "an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration" by the Sentencing Commission "that should result in a sentence different from that described" in the guidelines. 18 U.S.C. 3553(b); U.S.S.G. 5K2.0. Although the decision not to depart is ordinarily within the district court's discretion, DeCosta asserts that the district court erred in concluding that it had no discretion to depart. It quotes in part the district judge's comment at the hearing: But unless I am persuaded that this case is extraordinary [in] kind o[r] degree and a departure is justified, I'm required to give the defendant at least 12 months in prison. Anticipating that I would not have the discretion to give a probationary sentence, I've talked with the Bureau of Prisons, as well as with Pretrial Services and Probation. DeCosta's brief further argues that the court could and should have departed in light of DeCosta's limited intelligence, his family and employment situation, his cooperation in seeking counseling, his acceptance of -5- -5- responsibility, and the lack of danger that he posed to others. The government has responded with a brief of more than twice the length of that filed by DeCosta. The brief argues, with extensive citations, that DeCosta failed to raise the departure issue below and has therefore waived it. If not waived, says the government, the district court's sentence is in any case within the guideline range and therefore non- appealable. Finally, if the refusal to depart is appealable, the government says that none of the family or other circumstances urged are extraordinary enough to provide a reasonable basis for departure; and the brief analyzes each of these grounds. It is not easy to think of anything else that might have been argued in defense of the sentence. We start with the government's claim that the departure issue has been waived. There is no doubt that the district court did consider whether to depart. The court emphasized DeCosta's lack of dangerousness and went so far as to ask the parties to brief the question whether United States v. ______________ Studley, 907 F.2d 254 (1st Cir. 1990), and United States v. _______ ______________ Deane, 907 F.2d 11 (1st Cir. 1990), precluded a departure on _____ this ground. Apparently, DeCosta's counsel found no basis to distinguish Studley or Deane and on appeal agrees that lack _______ _____ of dangerousness alone would not be a permissible basis for departure. -6- -6- It is far less clear that the issue of departure on other grounds was explicitly raised at the hearing. DeCosta's counsel, as the government points out, never used the term, and the factors that he emphasized at the hearing, apart from lack of danger, were for the most part relevant to the selection of a sentence within the guideline range. On the other hand, DeCosta's counsel certainly did ask for probation, a result that could only be reached through a departure, and urged the same factors now pressed as grounds for departure. The district court made clear that it would happily depart if it had the authority to do so. On balance, we are not inclined to resolve this case on the basis of waiver. The government's next argument, that the district court's decision is unreviewable, presents quite a different problem. The discretionary decision not to depart is an action ordinarily not subject to appellate review, but there are certain exceptions. These exceptions include cases where the sentencing court declines to depart because of "a mistake of law," such as "the sentencing court's mistaken impression that it lacked the legal authority to deviate" or its "misapprehension of the rules governing departures." United ______ States v. Gifford, 17 F.3d 462, 473 (1st Cir. 1994). For a ______ _______ thorough discussion of the matter, see United States v. ___ _____________ Pierro, No. 93-1313 (1st Cir. July 27, 1994).  ______ -7- -7- Difficulty commonly arises where mitigating factors are urged as a basis for departure, and the district court simply asserts that it "cannot" or "is without authority" to depart. Terse phrases like these are common, for the district court is not required to give reasons for refusing to depart, but they may create an ambiguity. A district court might think that it "cannot" depart based on the factors urged because it misunderstands the guidelines or the precedents; for example, it might think that a mitigating factor is a forbidden basis for departure when it is actually a permissible one. Conversely, a district court might say that it "cannot" depart where it means only that it has weighed the factors urged and found that they do not distinguish the case from the mine run of cases. Here, we have no reason to think that the district court made any mistake of law in construing the governing statute, the guidelines or pertinent precedent. Defense counsel implies that the district court must have underestimated its authority to depart on grounds other than lack of danger, because the court failed to discuss the other factors as a possible basis for departure. But the obvious reason for this "failure" is that defense counsel at the sentencing hearing never explicitly urged these other factors as a basis for departure. -8- -8- DeCosta is also not helped by the district judge's comment that "I would not have the discretion to give a probationary sentence . . . ." Context often explains just what the court meant by such remarks and it does so here. The district judge's immediately prior sentence, quoted _____ above, makes plain that the district judge meant only that he couldnot findthecase extraordinaryenoughto justifyadeparture. In this case, it is easy to conclude that there is no evident or even arguable error of law that would allow us to review the refusal to depart. But difficult cases--at least as to reviewability--will remain wherever mitigating factors are explicitly urged as the basis for a departure and the district court says only that it "cannot" or "lacks power" to depart. Sometimes, as here, it will be easy to determine just what the district court meant. But because the problem is a recurring one, we have a suggestion: that the district court say--where this is the case--that it has considered the mitigating factors urged but does not find them sufficiently unusual to warrant a departure in the case at hand. Of course, in some cases this formula would not be proper. Here, for example, we fully agree with the district court that Studly and Deane mean that the district court ______ _____ would have had no authority to depart simply because DeCosta was not dangerous. Similarly, if a district court desired to depart but thought this course forbidden by explicit -9- -9- guideline language, one would expect the court to cast its refusal in these terms. But where permissible factors are urged and the court simply thinks that there is not enough to distinguish the case from the ordinary, a sentence to this effect would be helpful. Having found no legal error, we need not consider the government's final, alternative argument that the circumstances in this case are not so extraordinary as to provide a basis for departure. Still, it would be unfortunate to leave the impression that there exists an obvious basis for departure that we are ignoring because defense counsel failed to frame the legal issue in the district court. No record evidence is present here that "reduced mental capacity contributed to the commission of the offense," U.S.S.G. 5K2.13, and the guideline language on family circumstances and employment is not helpful to DeCosta in this case. Id. 5H1.5, 5H1.6. ___ Child pornography is not a victimless crime, but for DeCosta and his family this is surely a very sad affair. We commend the district court for its multiple efforts to find a solution best suited to the circumstances. As for the government, zeal is ordinarily to be admired in a prosector but it can be overdone. Accordingly, we are comforted to learn that prior to prosecution DeCosta was offered an opportunity to participate in the pretrial diversion program- -10- -10- -even though for reasons not developed in the record no agreement was ultimately reached. The appeal is dismissed for want of appellate _________ jurisdiction. -11- -11-