**UNITED STATES of America, Appellee,**

v.

**Mark ALBRITTON, Appellant.**

**No. 94–3173.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 9, 1995.

Decided Feb. 20, 1996.

---

Santha Sonenberg, Assistant Federal Public Defender, New York City, argued the cause, for the appellant. A.J. Kramer, Federal Public Defender, Washington, DC, was on the brief.

Cynthia M. Alksne, Assistant United States Attorney, Washington, DC, argued the cause, for the appellee. Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr., and Frederick W. Yette, Assistant United States Attorneys, were on the brief.

Before: HENDERSON, ROGERS and TATEL, Circuit Judges.

Opinion for the court filed PER CURIAM.

Concurring opinion filed by Circuit Judge HENDERSON.

Concurring opinion filed by Circuit Judge ROGERS.

PER CURIAM:

The jury convicted Mark Albritton of possessing with intent to distribute over fifty grams of cocaine base (crack) and a smaller amount of marijuana. The district court sentenced him to 121 months in prison. On appeal, Albritton primarily complains about the length of his sentence. He argues that the district court did not understand that he qualified for a reduced sentence based on his minimal role in the intended drug distribution. We affirm his convictions.

## I. FACTS

A little after 1:00 a.m. on April 23, 1993 a Greyhound bus traveling from Newark, New Jersey to Richmond, Virginia made a brief stop in Washington, D.C. Six District of Columbia police officers, members of a drug interdiction task force, boarded the bus. Detective Lawrence Coates questioned Mark Albritton, a passenger. According to Coates, while he questioned Albritton, Albritton repeatedly touched a black tote bag that was on the adjacent seat. Coates also testified that Albritton gave him permission to search the tote bag. The search revealed that the bag contained 325 grams of crack as well as

some clothes and compact discs. After the police arrested Albritton, they found in his jacket pocket another 125 grams of crack and a small amount of marijuana.

Albritton was charged with possessing more than fifty grams of crack base with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(iii) and possessing marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). He was held without bond from April 23, 1993 until his trial on September 7–9, 1994. At trial, his wife testified that the tote bag was not his. Through his counsel, he conceded that he possessed the drugs found in his jacket but claimed that they were for personal use. On September 9, 1994 the jury convicted Albritton on both counts. On December 1, 1994 the district court sentenced him to 121 months' imprisonment and five years of supervised release on the crack count and a concurrent sentence of six months' imprisonment and two years of supervised release on the marijuana count.

## II. DISCUSSION

The appeal raises two issues: first, whether Albritton's attendance at trial in prison clothes rendered his trial unconstitutional; and second, whether the district court erred in not granting a downward sentencing departure in his sentence based on his minor role in the intended drug distribution. We disagree with the appellant on the first issue and conclude that he waived the second issue.

### A. Prison Clothes

■ Albritton argues that his attendance at trial in a blue prison jump suit violated the United States Constitution, relying on several decisions which indicate that a defendant's fourteenth amendment due process right may be violated when he appears at trial in prison clothes. *Estelle v. Williams,* 425 U.S. 501, 505, 96 S.Ct. 1691, 1693, 48 L.Ed.2d 126 (1976) ("[D]efendant's clothing is so likely to be a continuing influence throughout the trial that ... an unacceptable risk is presented."); *United States v. Carter,* 522 F.2d 666, 677

(D.C.Cir.1975) ("[W]e condemn the practice of producing prisoners in court who are dressed in clothes typical of jails or penal institutions."). The cases establish that due process is met so long as the government does not *compel* a defendant to wear prison clothes at trial. *Estelle,* 425 U.S. at 507, 96 S.Ct. at 1694 ("[T]he particular evil proscribed is compelling a defendant, against his will, to be tried in jail attire."); *Carter,* 522 F.2d at 677 ("compelling a defendant") (emphasis removed).

Albritton, however, was not compelled to wear prison clothes at his trial. The record suggests that he would have been permitted to wear any clothes that were supplied to him. *See* Appellant's App. (App.) 136. His wife brought him slacks and two sweaters but, according to the deputy U.S. Marshal guarding him, the slacks were too small and he did not even try on the sweaters. Nothing in the record suggests that he asked for another set of clothes. Moreover, Albritton did not object to wearing prison clothes at trial. *See Estelle,* 425 U.S. at 512–13, 96 S.Ct. at 1697 ("[F]ailure to make an objection to the court as to being tried in such [prison] clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation."). We conclude that Albritton was not compelled to wear prison clothes and therefore affirm his convictions.

### B. Section 5K2.0 Departure

On appeal, Albritton argues that section 5K2.0 of the United States Sentencing Guidelines (guidelines) should have been used below to shorten his time in prison. Section 5K2.0 applies to the "atypical case, one in which a particular guideline linguistically applies but where conduct significantly differs from the norm." USSG, Ch. 1 Pt. A, 4(b). Section 5K2.0 in pertinent part grants the district court discretion to depart downward from an applicable guideline sentencing range if mitigating circumstances affecting the sentence were not "adequately taken into consideration by the Sentencing Commission in formulating the guidelines." [1]

1. § 5K2.0 Grounds for Departure (Policy Statement)

■ According to Albritton, the district court erroneously concluded that it lacked authority to grant him a section 5K2.0 downward departure. Albritton, however, never asked the district court for a section 5K2.0 departure. Instead he requested but did not receive a four-point downward adjustment in his base offense level under section 3B1.2 to reflect his "minimal" role in the offense. By failing to request at sentencing a downward departure under section 5K2.0, he has waived the issue on appeal.

Albritton insists that he requested a section 5K2.0 downward departure. As evidence, he points out that his trial counsel requested a "departure," a term used only in Chapter 5 of the guidelines.[2] A review of the transcript of the sentencing proceeding, however, convinces us that Albritton's lawyer was relying not on a Chapter 5 departure but instead on a Chapter 3 adjustment. He stated: "I think that within the scheme of things his role in the offense was a *minimal role* and that your honor should consider giving him a *four-point level reduction under 3B1.2.*" App. at 149 (emphasis added). His specific citation to section 3B1.2, his request

for a four-point reduction and his use of the word "minimal" manifest that he misspoke in his one-word invocation of Chapter 5 terminology.[3] Section 5K2.0 includes no specific point reduction nor the word "minimal." Moreover, Albritton did not refer the district court to section 5K2.0.

The defendant and the government agree that we review Albritton's tardy departure request for "plain error" only. Plain errors are those that obviously and fundamentally violate a defendant's rights. *United States v. Dawson,* 990 F.2d 1314, 1316 (D.C.Cir. 1993). As Albritton's trial counsel recognized, section 3B1.2 plainly addresses whether the defendant's relative culpability warrants a different sentence. Assuming, without deciding, that we conduct plain error review in these circumstances, the district court's failure to grant *sua sponte* a section 5K2.0 departure in this case was not plain error, if error at all, because the guidelines, in section 3B1.2, account for his role in the drug distribution.

For the foregoing reasons, Albritton's convictions are affirmed.

*So ordered.*

Under 18 U.S.C. § 3553(b) the sentencing court may impose a sentence outside the range established by the applicable guideline, if the court finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

2. Albritton's trial counsel stated: "[I] ask that your honor consider [the facts of this case] in order to downward depart." App. at 149.

3. Although Albritton does not quarrel with the district court's failure to give him a section 3B1.2 adjustment, he nevertheless relies on our decision in *United States v. Caballero,* 936 F.2d 1292 (D.C.Cir.1991), *cert. denied,* 502 U.S. 1061, 112 S.Ct. 943, 117 L.Ed.2d 113 (1992), to argue that section 3B1.2 does not supply the only route under the guidelines to a reduced sentence based on his minimal participation in the criminal conduct. But *Caballero* does not address whether section 3B1.2 constitutes the sole guideline provision by which a sentencing court can consider a defendant's role in the offense. *See Watson,* 57 F.3d at 1096 (rejecting section 5K2.0 request because section 5K1.1 manifests adequate consideration of mitigating circumstance). Of course, an evaluation of role in the offense under

section 3B1.2 requires another "role" to which to compare the defendant's. *See* USSG § 3B1.2, comment n. 1 (mitigating role adjustment "applies to a defendant who play a minimal role in *concerted* activity. It is intended to cover defendants who are plainly among the least culpable of those involved in the conduct *of a group.*") (emphasis added). This point illustrates a second reason that *Caballero* does not aid Albritton. There, as the record makes clear, the defendant did not act alone. Caballero was arrested on a Greyhound bus when it arrived in the District of Columbia from New York. At the time of Caballero's arrest, the police also arrested a second passenger who, like Caballero, was carrying crack inside a Cheese Nips box. Supplemental Appendix at 2, *Caballero* (Nos. 90–3129, 90–3156). In *Caballero,* we concluded that the defendant could qualify for a section 3B1.2 adjustment so long as the evidence established that the "relevant conduct" involved more than one participant and that the defendant's culpability was relatively minor. *Caballero,* 936 F.2d at 1299. Here, Albritton simply asserted that others were on the bus with him. App. at 149 ("He told the authorities in this case that the people that he was transporting the drugs for were there too."). The district court declined to credit his unsupported claim, concluding that it did not "know anything about anybody else who was involved in this particular situation." App. at 153.

KAREN LeCRAFT HENDERSON, Circuit Judge, concurring:

I write separately because I believe Albritton's departure request, made for the first time on appeal, is not reviewable. We have never held, nor should we, that a defendant who does not even *make* a departure request at sentencing is entitled to plain error review.

Congress has granted appellate courts a "narrow scope of review," *Williams v. United States,* 503 U.S. 193, 199, 112 S.Ct. 1112, 1118, 117 L.Ed.2d 341 (1992), which entitles the defendant to appeal his sentence if it was imposed in violation of law or as a result of the incorrect application of the guidelines. 18 U.S.C. § 3742(a). We do not, however, review a "court's discretionary decision that the particular circumstances of a given case do not warrant a departure." *United States v. Pinnick,* 47 F.3d 434, 439 (D.C.Cir.1995); *see United States v. Ortez,* 902 F.2d 61, 64 (D.C.Cir.1990); Jefri Wood and Diane Sheehey, *Guideline Sentencing: An Outline of Appellate Case Law on Selected Issues* 224 (1995) ("Every circuit has held that, unless the decision involves an incorrect application of the Guidelines or is otherwise in violation of the law, a district court's discretionary refusal to depart downward is not appealable."). Nor do we review the extent of a downward departure. *United States v. Hazel,* 928 F.2d 420, 423 (D.C.Cir.1991). If the defendant advances a departure *argument* on appeal different from the departure *argument* made to the trial court, we review the district court's denial for "plain error" only. *United States v. Dawson,* 990 F.2d 1314, 1316 (D.C.Cir.1993) (plain error review of district court's denial of *section 5K2.0* departure where *section 5K1.1* relied on below

raised for first time on appeal); *United States v. Watson,* 57 F.3d 1093, 1097 n. 6 (D.C.Cir.1995) (plain error review of departure denial where basis of departure applicability changed on appeal); *cf. United States v. Bradshaw,* 935 F.2d 295, 303 (D.C.Cir. 1991) ("As with all other issues, in order to preserve for appeal an argument for departure from the guidelines, a defendant must press that specific argument before the district court.") (concluding defendant's section 5K2.0 argument not reviewable, although raised at sentencing, because defendant did not specify factual basis for request below); *see generally United States v. Saro,* 24 F.3d 283, 286–88 (D.C.Cir.1994) (describing plain error review in sentencing context).

Plain error "review" of a departure request made for the first time on appeal upsets the intended sentencing scheme.[1] *See Foster,* 988 F.2d at 209 (departure request based on inadequacy of criminal history category unreviewable). The statute grants the government "reasonable" review of a decision to depart downward and the defendant "reasonable" review of a decision to depart upward. 18 U.S.C. § 3742. But a district court's decision to *deny* a departure request in its discretion is unreviewable. *Ortez,* 902 F.2d at 64. By conducting any review of a defendant's departure claim never made to the district court, we unintentionally reward the practice of holding back from the district court. *See also Hazel,* 928 F.2d at 424. A defendant might well decide to save a sentencing argument until he appeals rather than risk an unreviewable denial. To protect the district court's broad authority to decide departure issues, we must ensure that the defendant bring those issues to its attention to begin with.[2] I would hold that, because

---

1. Indeed, "review" may be a misnomer inasmuch as there is nothing the district court did nor, on request, failed to do for us to review.

2. Albritton asserts that he is entitled to review because he challenges the district court's understanding of its sentencing authority. No one disputes our jurisdiction to review a failure to depart that is based on a misapplication of the guidelines or other legal error. *See* 18 U.S.C. § 3742(c); *United States v. Ortez,* 902 F.2d 61, 64 (D.C.Cir.1990); *United States v. Johnson,* 49 F.3d 766, 768 (D.C.Cir.1995). But to conclude that the trial court did not commit plain legal error

by not *sua sponte* exercising its unreviewable discretion to downward depart makes no sense to me. Albritton should not be able to ask us to speculate on the district court's disposition of a request had he made one, a disposition that may or may not have been reviewable depending on the court's rationale. *See United States v. Hazel,* 928 F.2d 420, 424 (D.C.Cir.1991) ("[S]hould we remand a downward departure decision to the trial court, the sentencing judge could easily resolve the ... problem by providing for no departure at all—a decision we would be unable to review.").

Albritton failed to make his departure argument below, he has waived the issue on appeal. Accordingly, I would dismiss that portion of his appeal.

ROGERS, Circuit Judge, concurring:

The government and appellant Albritton agree that the court's review of Albritton's tardy departure request is for "plain error," Appellee's Brief at 10; Appellant's Brief at 18, limiting our review to a determination of whether the district court's refusal to grant departure was either "in violation of law" or "an incorrect application of the sentencing guidelines." 18 U.S.C. § 3742(a)(1), (e)(1); § 3742(a)(2), (e)(2) (1988); *see United States v. Watson,* 57 F.3d 1093, 1096–97 (D.C.Cir. 1995); *United States v. Saro,* 24 F.3d 283, 290–92 (D.C.Cir.1994); *United States v. Foster,* 988 F.2d 206, 209 (D.C.Cir.), *cert. denied,* 508 U.S. 945, 113 S.Ct. 2431, 124 L.Ed.2d 651 (1993). Plain errors are those errors that obviously and fundamentally violate a defendant's rights. *United States v. Dawson,* 990 F.2d 1314, 1316 (D.C.Cir.1993).

Unlike the government, Judge Henderson would not allow plain error review for a waived Guideline claim. *See* concurring opinion of Judge Henderson, at 2. In so doing, she relies on general statements by this court that a district court's decision to deny a departure request is unreviewable. *See, e.g., United States v. Johnson,* 28 F.3d 151, 156 (D.C.Cir.1994) ("[A] 'sentencing court's discretionary refusal to depart downward is not reviewable on appeal.' "), *quoting United States v. Spencer,* 25 F.3d 1105, 1112 (D.C.Cir.1994); *United States v. Pinnick,* 47 F.3d 434, 439 (D.C.Cir.1995) ("A court's discretionary decision that the particular circumstances of a given case do not warrant a departure, however, is not reviewable."); concurring opinion of Judge Henderson at 1. However, in view of the language of the statute, *see* 18 U.S.C. § 3742(a)(1), (e)(1); § 3742(a)(2), (e)(2), those statements must be read to mean that this court cannot second-guess the district court's exercise of reasoned discretion but can review for an error of law or an incorrect application of the Guidelines. *Cf. United States v. Sammoury,* 74 F.3d 1341, 1345 (D.C.Cir.1996) ("it is no more an infringement on the discretion of trial judges to set aside a sentence when the refusal to depart rests on a clearly erroneous factual mistake than to set aside a sentence when the refusal stems from a misinterpretation of the Guidelines" because "[i]n both situations, the judge has in effect not exercised the discretion conferred on him [or her] to depart or not to depart, in the former because of an error of fact, in the latter because of an error of law."); *id.* at 1343–44 (citing *United States v. Burnett,* 66 F.3d 137, 139 (7th Cir. 1995)). Review for plain error remains. 18 U.S.C. § 3741 (1988); Fed.R.Crim.P. 52; *see Watson,* 57 F.3d at 1097 n. 6; *see generally United States v. Olano,* 507 U.S. 725, 730–32, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993) ("[a] rigid and undeviating judicially declared practice under which courts of review would invariably and under all circumstances decline to consider all questions which had not previously been specifically urged would be out of harmony with ... the rules of fundamental justice") (quoting *Hormel v. Helvering,* 312 U.S. 552, 557, 61 S.Ct. 719, 721, 85 L.Ed. 1037 (1941)); *id.* 507 U.S. at 732–34, 113 S.Ct. at 1777 (distinguishing between waiver and forfeiture of a right). Thus, as this court acknowledged in describing the nature of plain error review of sentencing in *Saro,* 24 F.3d at 287–88, where there was "obvious error" and clear error in fact finding evident upon examining the evidence, verdict, and documents on which the district court relied in sentencing, a remand for re-sentencing was required. *Id.* at 291–92; 18 U.S.C. § 3742(f)(1) (1988). Given the high threshold that a defendant must show to obtain relief because of plain error, *Saro,* 24 F.3d at 286–87; *Olano,* 507 U.S. at 736–37, 113 S.Ct. at 1779, it can hardly be that "we unintentionally reward the practice of holding back from the district court." Concurring opinion of Judge Henderson at 2.

Albritton failed to request a departure under USSG § 5K2.0, and under the circumstances the district court had no affirmative obligation to address such a departure in the absence of a request. *Cf. United States v. Bradshaw,* 935 F.2d 295, 303 (D.C.Cir.1991). There is nothing in the record to suggest that the district court plainly misunderstood

its authority to depart from the guidelines, or that it clearly erred in its conclusion regarding Albritton's alleged "minimal" participation. *See id.* Albritton makes no claim that his sentence was otherwise plainly in violation of law. *See Burnett,* 66 F.3d at 139. Therefore, finding no plain error, I concur in Parts I and IIA and in affirming the judgment of conviction.