Barense v. Town of Barrington          CV-96-158-JD   11/19/96   P

UNITED STATES DISTRICT COURT FOR THE
                         DISTRICT OF NEW HAMPSHIRE


Jack Barense, et al.

        v.                             Civil No. 96-158-JD

The Town of Barrington


                            O R D E R


        The plaintiffs, residents of the town of Barrington, Rhode

Island, brought this action under 42 U.S.C. § 1983 and Article I,

Section 3 of the Rhode Island Constitution, seeking declaratory

and injunctive relief related to the town's practice of providing

certain municipal services to religious organizations at no cost

to those organizations.  Before the court are the motions for

summary judgment of the plaintiffs (document no. 7) and the

defendant (document no. 10).


                           Background

        The facts relevant to the instant motion have been

stipulated to by the parties and are incorporated in pertinent

part verbatim:

        1) Plaintiffs Jack Barense, Diane Barense, Edythe
        Wiedeman Smith, Peter McCalmont, Dorothy Zimmering and
        John Carroll are residents of the Town of Barrington,
        Rhode Island.

2) Each of the plaintiffs pays taxes to the Town of Barrington (real estate taxes and automobile excise taxes).

3) The defendant, Town of Barrington, is a municipality of the State of Rhode Island, incorporated under the authority of state law, and for purposes of the matters presently at issue, operating at all times under the color of state law.

4) For approximately sixty (60) years or more, the town has provided to churches, a monastery and synagogue located within the town, the service of snow plowing the driveways and parking lots of those religious institutions, without charge.

5) The Town has also provided free trash collection for the churches (the term "churches" will be used throughout as including the monastery and synagogue) and free daily trash collection for Roman Catholic schools located within the town. Following the commencement of this case, the town discontinued the free daily trash collection service at the religious schools but continued the weekly trash collection at churches. On March 11, 1996, the Town Council voted to discontinue the weekly trash pick-up at churches, again retaining the free snowplowing for such institutions. The termination of the trash pick-up was to be effective April 12, 1996.

6) The free snow plowing and trash service has not been available to other property owners in the town including other non-profit or charitable institutions.

7) On February 12, 1996, the Town Council voted to continue the free service of snow plowing for churches and voted not to extend the service to other non-profit institutions or agencies in the town.[1]

---

[1]The council made its decisions over the advice of the assistant town solicitor, who voiced his opinion at the meeting that the snowplowing practice was "absolutely prohibited by the Constitution of the United States." In offering his conclusion, the assistant solicitor presented the council with several alternatives that, in his view, might have eased the

8) The plaintiffs are opposed to the use of tax funds and town equipment and personnel in a manner which favors religious institutions over other social services, educational non-profit entities [sic]. They also oppose the use of town resources to directly aid religion.

9) There is no formal contact between the religious institutions and the town regarding the snow plowing service. In fact, no direction is given by the churches as to the manner in which the town should plow each individual parking lot.

10) During the 1995-1996 fiscal year, the Town overspent its $80,000.00 snow plowing budget by $65,000.00 as of February 28, 1996. As a result, Public Works Director for the town, Peter D'Angelis, Jr., announced that fewer seasonal employees may be hired, that the recycling center hours may be cut, town drainage projects may be delayed and work on town parks and fields may be postponed.

11) The town sought Federal Emergency Management Assistance (FEMA) after the blizzard of 1996 which was determined to be a "disaster", the town could receive federal funds reimbursing up to 75% of expenses for snow plowing and overtime [sic].

. . . .

13) On April 1, 1996, the town council voted 3-2 to not expand the snowplowing service to other, secular, non-profit entities in the town. . . .

---

constitutional infirmities of the town's snowplowing operation, including offering free services to all nonprofit charitable organizations. The assistant solicitor also noted that, to the extent the religious institutions had been designated as emergency shelters pursuant to the town's emergency operations plan, the town might have a justification for providing free snowplowing services. Although the plaintiffs have alluded to the town's emergency operations plan as a potential justification for providing snowplowing services to religious organizations, the defendant has not urged this theory upon the court.

14) The town has not determined or looked into whether the plowing has any impact on church attendance.

15) The Town of Barrington Emergency Operations Plan indicates that in peace time disasters, schools and churches in the town would fill the need for shelters. Of the thirteen designated shelters, two of the town's churches and the monastery are included. The other churches which receive the snowplowing are not on the list of shelters. Included on the list of shelters are two non-profits, a private school, Zion Bible Institute (formerly Barrington College) and the East Bay Mental Health Center. They are not plowed by the town.

The plaintiffs commenced this action on February 22, 1996, alleging that the town's practice of providing snowplowing services to religious institutions at no cost violates the United States and Rhode Island constitutions.

## Discussion

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Rodriquez-Garcia v. Davila, 904 F.2d 90, 94 (1st Cir. 1990) (citing Fed. R. Civ. P. 56 (c)). When the facts are undisputed, to prevail the moving party must show that it is entitled to judgment as a matter of law. Desmond v. Varrasso (In re Varrasso), 37 F.3d 760, 764 (1st Cir. 1994).

The court will first address the plaintiffs' claim under the United States Constitution. The Establishment Clause of the

4

First Amendment prevents the government "from appearing to take a position on questions of religious belief," County of Allegheny v. ACLU, 492 U.S. 573, 594 (1989), and prevents governmental endorsement not only of particular religions, but also of religion in general, see, e.g., Board of Educ. v. Grumet, 114 S. Ct. 2481, 2487 (1994).  In Lemon v. Kurtzman, 403 U.S. 602 (1971), the Supreme Court outlined a three-part test for determining whether a government practice violates the Establishment Clause: (1) the practice must have a secular purpose; (2) the practice must neither advance nor inhibit religion in its principal or primary effect; and (3) the practice must not foster an excessive entanglement with religion.  Id. at 612-13; see also Lamb's Chapel v. Center Moriches Union Free Sch. Dist., 508 U.S. 384, 395 & n.7 (1993) (reaffirming the Lemon test).  Although some Justices have at times abandoned Lemon as a means of ascertaining compliance with the Establishment Clause, see, e.g., Lee v. Weisman, 505 U.S. 577, 586-87 (1992) (Kennedy, J.) (employing a "coercion" test); Allegheny, 492 U.S. at 627-31 (O'Connor, J., concurring) (advocating an "endorsement" test), the Court's Establishment Clause jurisprudence makes clear that, consistent with the first two prongs of Lemon, the provision of governmental services to religious entities must not provide unique benefits to particular religions and must not expressly

5

favor religious entities over nonreligious ones.  See, e.g.,
Rosenberg v. Rector & Visitors of Univ. of Va., 115 S. Ct. 2510,
2521-22 (1995) (public university's funding of magazine
advocating Christian viewpoint would not offend Establishment
Clause where funding was available to religious and nonreligious
student groups alike); Grumet, 114 S. Ct. at 2491 (general
availability of benefits provided to religious groups necessary
for compliance with Establishment Clause); Texas Monthly, Inc. v.
Bullock, 489 U.S. 1, 14 (plurality opinion) (1989) (invalidating
state law exempting only religious periodicals from sales tax),
Widmar v. Vincent, 454 U.S. 263, 273 (1981) (policy under which
religious and nonreligious groups would have equal access to
university facilities would not offend Establishment Clause);
Wald v. Tax Comm'n, 397 U.S. 664, 673 (1970) (tax exemption
conferred on religious properties did not offend Establishment
Clause where state had not singled out particular church, but
exempted a "broad class of property owned by nonprofit, quasi-
public corporations").  Compare Illinois ex rel. McCollum v.
Board of Educ., 333 U.S. 203 (1948) (invalidating public school
program that permitted use of school facilities by religious
groups but not by others) with Widmar, 454 U.S. at 272 n.10
(distinguishing McCollum by noting that permitting religious

6

groups, but not other groups, to use school facilities has effect of sponsoring religion).

In this case, the snowplowing services that the town provides to religious institutions within its borders are not available to any other property owners. Moreover, as noted above, the town has on two occasions declined to expand its free snowplowing services to nonreligious nonprofit institutions. Although the town claims that it offers snowplowing services to religious entities as a means of ensuring the safety of the public, this justification is belied by the town's failure to provide snowplowing services to nonreligious entities within its borders. A municipality does not act in the general interest of its citizenry when it selectively confers upon religious institutions a benefit not made available to other owners of private property. Because the town clearly is providing a benefit to religious entities that is not available to nonreligious entities, and thus is promoting religion over nonreligion, its current practice of providing snowplowing services to religious institutions within its borders violates the Establishment Clause of the First Amendment[2] and must cease.

_____

[2]Since the United States Constitution is dipositive of this case, the court does not reach the plaintiffs' claims under the Rhode Island Constitution.

7

Although the plaintiffs have sought both declaratory and injunctive relief, at this time the court has no reason to believe that the town will act in a manner inconsistent with the court's ruling as herein set forth. Therefore, in the interest of comity, the court will refrain from issuing an injunction at this time. However, in the event the town fails to conform with the law as herein declared or otherwise acts in a manner inconsistent with the court's declaration, the court reserves to the plaintiffs the right to reopen the case for the purpose of seeking injunctive relief.

## Conclusion

The plaintiffs' motion for summary judgment (document no. 7) is granted. The defendant's motion for summary judgment (document no. 10) is denied.

The plaintiffs are awarded costs and attorneys' fees.

The clerk is ordered to close the case.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
Chief Judge

November 19, 1996
cc:  John W. Dineen, Esquire
     Marc DeSisto, Esquire
     Raymond F. Burghardt, USDC-RI

8