**In re SEALED CASE NO. 98–3116.**

**No. 98–3116.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 21, 1999.

Decided Dec. 28, 1999.

Neil H. Jaffee, Assistant Federal Public Defender, argued the cause for appellant. With him on the briefs was A. J. Kramer, Federal Public Defender.

Alyse Graham, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney, and John R. Fisher, Mary-Patrice Brown and Diana Harris Epps, Assistant U.S. Attorneys.

Before: SILBERMAN, SENTELLE and ROGERS, Circuit Judges.

Opinion for the court filed by Circuit Judge SENTELLE.

Dissenting opinion filed by Circuit Judge ROGERS.

SENTELLE, Circuit Judge:

In 1997, appellant pleaded guilty in the United States District Court to several counts of cocaine possession and distribution in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). At sentencing, the trial court ran all sentences on all counts concurrently and sentenced appellant to 151 months. On appeal, appellant seeks a remand for resentencing on the basis that the District Judge was unaware of his authority under § 4A1.3 of the United States Sentencing Guidelines Manual ("Guidelines") to order a downward departure from the career offender guideline range assigned to appellant. While the judge's discourse on the matter was less than clear, we hold that his comments should not be interpreted as reflecting the

view that he had no legal authority to depart. Therefore, we affirm.

## I. Background

On May 2, 1997, appellant pleaded guilty to one count of unlawful possession with intent to distribute cocaine and six counts of unlawful distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). Based on the drug quantity involved, the Presentence Report ("PSR") set the Guideline base offense level at eighteen. Since appellant had been convicted of two prior felony drug offenses, she qualified as a career offender under § .4B1.1 and thus her offense level was raised to thirty-two. However, her offense level was reduced by three for acceptance of responsibility. Therefore, her final offense level totaled twenty-nine.

Regarding appellant's two prior offenses, the PSR showed that (1) the two offenses were committed within months of each other; (2) the offenses occurred almost ten years prior to the instant offenses; (3) the offenses involved very small quantities of drugs; (4) appellant received a probationary sentence on her second conviction; (5) appellant successfully completed her parole and probation; (6) appellant sold drugs to support her addiction rather than for financial gain; and (7) appellant led a conviction-free and productive life during the ten year period between her prior offenses and instant offenses. Had appellant not been deemed a career offender, her total offense level would have been fifteen (base eighteen less three for acceptance of responsibility) and her sentencing range would have been twenty-four to thirty months. However, since the court ruled that appellant's two prior convictions qualified her as a career offender, her sentencing range was 151–188 months.

Prior to sentencing, defense counsel filed objections to the PSR. Counsel objected to the career offender adjustment on the grounds that it did not "accurately reflect [appellant's] criminal history, but artificially inflate[d] her record and offense level." The probation officer rejected counsel's characterization in an addendum to the PSR. In making his objections, defense counsel did not raise any grounds for departure specifically under § 4A1.3, the Guideline provision cited on appeal, which allows for a sentencing departure when "the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes." U.S. Sentencing Guidelines Manual § 4A1.3 (1998).

At the sentencing hearing, the trial judge stated that he "tentatively" agreed with the PSR. The judge also stated that he was "tentatively" inclined to impose a sentence at the bottom of the Guideline range and to run all sentences on all counts concurrently. Defense counsel complained about the harshness of the sentencing range in light of various mitigating factors, including appellant's age, drug addiction, period of drug abstinence and gainful employment, and educational background. In response, the judge stated:

> I wish that there was some way I could give her a sentence less than the guidelines call for. I am going to sentence her at the bottom of the guidelines, but I am convinced that she needs a long period of abstinence and the treatment that she can get in the federal system.

After defense counsel reiterated his objection to the length of the sentencing range, the judge responded, "I don't have any alternative." The court proceeded to sentence appellant to 151 months, running all counts concurrently in order to reach the bottom of the applicable range.

On appeal, appellant argues that her case must be remanded for resentencing since the sentencing judge was unaware that he had authority under § 4A1.3 to order a downward departure from the career offender Guideline range on the grounds that appellant's criminal history

**490**

significantly overrepresented the seriousness of her prior convictions and the likelihood she would commit future crimes. For the reasons set forth more fully below, we reject appellant's contention that the judge misunderstood his sentencing authority.

## II. Discussion

 A defendant can appeal a sentence issued under the Guidelines only if the sentence "(1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; or (3) is greater than the sentence specified in the applicable guideline range...." 18 U.S.C. § 3742(a) (1994). Here, appellant argues that the District Judge, as evidenced by certain statements in the record, was not aware that he could enter a departure under § 4A1.3. While this court will review a District Judge's refusal to depart downward if the judge misconstrued his statutory authority to depart, see, e.g., *United States v. Beckham*, 968 F.2d 47, 49, 53 (D.C.Cir.1992); *United States v. Ortez*, 902 F.2d 61, 64 (D.C.Cir. 1990), we conclude that the District Judge's comments during the sentencing hearing did not amount to an assertion that he lacked the legal authority to depart, especially as his comments were made in response to defense counsel's general request for leniency and not in response to a specific request for departure.

Although appellant's counsel filed written objections to the criminal history guideline calculations contained in the PSR, he did not specifically request a § 4A1.3 departure prior to sentencing. In his letter, counsel objected on the grounds that appellant's prior convictions did "not accurately reflect her criminal history, but artificially inflate[d] her record and offense level" because the two prior convictions should not have been considered separately under § 4B1.2. Specifically, counsel argued that "[t]he predicate offenses for which [the probation officer] found defendant to be a 'career offender' were 'related'

according to § 4B1.2, Note 4 of the Sentencing Guidelines ... and therefore [the predicate offenses] should not be considered two separate and unrelated felonies pursuant to § 4B1.2, Note 4." However, counsel's written objection does not aid appellant's current position since the objection pertained to the relatedness of the prior offenses and did not touch upon § 4A1.3 departure authority. Moreover, counsel never specifically argued for departure at the sentencing hearing. Instead, counsel essentially asked the judge for leniency when assigning the sentence.

Since counsel never specifically argued for this departure from the appropriate Guideline range before or during the sentencing hearing, the District Judge's comments regarding his sentencing authority must be evaluated in that context. The First Circuit considered a similar record in *United States v. DeCosta*, 37 F.3d 5, 8 (1st Cir.1994). In that case, the circuit court observed that a district court often "simply asserts that it 'cannot' or 'is without authority' to depart." *Id.* That circuit observed that a district court making such an observation may be expressing the thought that it "cannot" depart because it lacks legal authority under the Guidelines, or simply "that it 'cannot' depart" because it has "weighed the factors urged and found that they do not distinguish the case from the mine run of cases." *Id.* In adopting the later view of the case before it and dismissing the improvident appeal, that circuit noted that the failure of the district court under review to discuss the factors as to which the appellant thought it lacked understanding were easily explained by the failure of the defense counsel at sentencing to explicitly urge those factors as a basis for departure. Just so here.

Thus, the critical question on appeal is whether the record establishes that the district court judge misunderstood his departure authority. *See Ortez*, 902 F.2d at 64. Granted, the judge stated that he "wish[ed]" he could have sentenced appellant below the guideline range but conclud-

ed that he did not "have any alternative." However, the language used by the judge is the kind of language that sentencing judges have always used, even in the days of judicial sentencing discretion unbridled by the Guidelines, to mean that the judge could not in good conscience or with good judgment give as lenient a sentence as requested by defense counsel. *See United States v. Smith*, 27 F.3d 649, 665 (D.C.Cir. 1994) (Sentelle, J., dissenting) ("Sentencing judge[s] ... typically said something like, 'Counsel, I'd like to give your client a lenient sentence, but I just can't see any basis for it.'"). In making such a statement, the judge does not mean that he could not lawfully give the defendant a lenient sentence but rather that he cannot do so in good conscience. Here, the District Judge's statements are in accord with a sentencing judge's attempt to "soften the blow" prior to his meting out justice. However, we want to stress that sentencing judges should avoid using the ambiguous language that gives rise to appeals like the one before us. Justice is better served through clarity on the record.

Our dissenting colleague charges that by upholding the District Judge's decision on a record that contains ambiguity, we somehow "abdicate[ ] our responsibility to determine our own jurisdiction," and that our decision "is potentially unjust." Dissent at 494. Of course, any decision is potentially unjust. So far as abdicating our responsibility, however, it is not clear to us how we do anything other than choose a different decision than the one chosen by our colleague who, we would hold, has applied the wrong standard of review. Her chosen standard which finds reversible error on ambiguity in the district court record where the ground of error asserted on appeal was never raised is, on its face, inconsistent first with *United States v. Pinnick*, 47 F.3d 434 (D.C.Cir.1995), wherein we held that a district judge's refusal to depart without explanation was unreviewable where the appellant had not afforded the district court with the opportunity and occasion to explain on the rec-

ord. As we held there, "[u]nder these circumstances, we assume 'that the district court kn[ew] and applie[d] the law correctly.'" *Id.* at 439 (quoting *United States v. Garcia–Garcia*, 927 F.2d 489, 491 (9th Cir. 1991)). Concededly, *Pinnick* involved a case with no objection rather than one like the present where a different objection was made, but it is not apparent from our colleague's dissent why a different rule should apply. Secondly, if a different rule does apply, then it would seem that at best, the waived objection should be reviewed for plain error. *See United States v. Albritton*, 75 F.3d 709, 712 (D.C.Cir. 1996). To hold, as our colleague does, that a record at worst ambiguous supports reversal is hardly consistent with plain error review. Finally, the searching review that reverses for an error not raised below on an ambiguous record is inconsistent with the governing statute. In adopting Guideline sentencing in the first place, Congress dictated that "[t]he court of appeals shall ... give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). Our colleague's approach gives no deference at all, in derogation of the obvious congressional desire to afford stability and presumptive regularity to sentencing under the Guidelines.

We further cannot agree with our colleague's styling of the recorded colloquy between the court and the defendant as "appear[ing] only to be consistent with the district court's view that it was bound to sentence the defendant within the Guideline range as enhanced by the career offender provision." Dissent at 493. Indeed, in explaining his sentence, the District Judge stated, "I wish that there was some way I could give her a sentence less than the guidelines call for. I am going to sentence her at the bottom of the guidelines, but I am convinced that she needs a long period of abstinence and the treatment that she can get in the federal system." Unless the court was aware that it did have some possibility of discre-

tion, the second of the quoted sentences is unexplainable. If the district court misapprehended its authority, such misapprehension is not apparent from the record. Guidelines sentencing was intended by Congress to create stability and presumptive regularity in sentencing, not to provide appellate courts a chance to reverse on ambiguous records in which the defense afforded the trial court no opportunity to pass on the question asserted on appeal.

## Conclusion

Reviewing the subject matter of defense counsel's objection to the PSR and his generalized pleas for leniency at the hearing together with the language used by the District Judge, we cannot conclude that the judge expressed the view that he had no legal authority to depart under the Guidelines. The record demonstrates that the District Judge exercised discretion rather than failed to consider his authority. As we noted above, we have jurisdiction to review defense appeals from sentencing only if the sentence "(1) was imposed in violation of law; (2) was imposed as a result of an incorrect application of the sentencing guidelines; or (3) is greater than the sentence specified in the applicable guideline range...." 18 U.S.C. § 3742(a). As this appeal falls in none of those categories, the appeal is hereby dismissed.

ROGERS, Circuit Judge, dissenting:

Although the court labors to palliate the district court's statements, the effort contravenes our precedent calling for a remand in circumstances such as these. The district judge stated "I don't have any alternative" in response to defense coun-

sel's argument for a reduced sentence because the criminal history category overstated the defendant's criminal history and because she had a low likelihood of recidivism. Under unambiguous circuit precedent, the district court had the "alternative" of considering a downward departure under § 4A1.3. Because the record is at best unclear as to whether the district court was aware of its authority to depart, a remand is required. *See United States v. Beckham*, 968 F.2d 47, 54–55 (D.C.Cir. 1992); *United States v. Saro*, 24 F.3d 283, 287–88 (D.C.Cir.1994).

As the court recognizes, along with every other circuit that has addressed the issue, this circuit has held that § 4A1.3 authorizes a downward departure when criminal history category VI, assigned pursuant to the career criminal offender guideline, significantly overrepresents the seriousness of the defendant's past criminal conduct.[1] In *Beckham*, the defendant's sentence was tripled to 30 years to life because he had been classified as a career offender on the basis of two prior convictions, one for attempted possession with intent to distribute cocaine in 1988 and the other for armed robbery in 1975. The district court had rejected defense arguments that the defendant's youth, family responsibilities, contrition, and the grossly disproportionate nature of the penalty provided authority to depart; defense counsel "complained about the harshness of his sentence in general terms, but he disclaimed knowledge of any specific authority in the Guidelines for departing downward based on a mismatch between his sentence and the seriousness of his misdeeds." *Id.* at 53. The district court had observed that the sentence was harsh and excessive but stated that it lacked any

---

1. *See, e.g., United States v. Spencer*, 25 F.3d 1105, 1112–13 (D.C.Cir.1994); *United States v. Clark*, 8 F.3d 839, 843 (D.C.Cir.1993); *Beckham*, 968 F.2d at 54; *see also United States v. Webb*, 139 F.3d 1390, 1395 (11th Cir.1998); *United States v. Lindia*, 82 F.3d 1154, 1165 (1st Cir.1996); *United States v. Rivers*, 50 F.3d 1126, 1131 (2d Cir.1995); *United States v. Shoupe*, 35 F.3d 835, 838–39 (3d Cir.1994); *United States v. Bowser*, 941 F.2d 1019, 1023 (10th Cir.1991); *United States v. Adkins*, 937 F.2d 947, 952 (4th Cir. 1991); *United States v. Lawrence*, 916 F.2d 553, 554–55 (9th Cir.1990); *United States v. Brown*, 985 F.2d 478, 482 (9th Cir.1993).

discretion in the matter because "Congress and the Sentencing Commission have taken that away from me." *Id.* This court, while noting the narrow scope of the departure authority granted by § 4A1.3, nevertheless remanded the case for resentencing "because the district court was unaware that § 4A1.3 might provide authority for a downward departure in a case like Beckham's...." *Id.* at 55. Decisions from other circuits likewise confirm the appropriateness of a remand to clarify similar ambiguities at sentencing.[2]

The district court's language in the instant case is not as expansive as it was in *Beckham.* The relevant portion of the colloquy is as follows:

> THE COURT: I wish that there was some way I could give [the defendant] a sentence less than the Guidelines call for. I am going to sentence [the defendant] at the bottom of the Guidelines, but I am convinced that she needs a long period of abstinence [from drug use] and the treatment that [the defendant] can get in the federal system.
>
> [DEFENSE COUNSEL]: .... [After contending that there is a low likelihood of recidivism] [W]hile I concur with the Court that [the defendant] needs a lengthy or [the defendant] needs some period of incarceration with a program, I would not ask that it be lengthy. The bottom end of the Guidelines are going

to put [the defendant] up at twelve or thirteen years.

> THE COURT: I don't have any alternative.

This colloquy and the district court's subsequent colloquy with defense counsel appear only to be consistent with the district court's view that it was bound to sentence the defendant within the Guideline range as enhanced by the career offender provision. This is not a case in which the district court rejected a possible downward departure because it had determined that the defendant's case was not one of the exceptional cases that would fall within a downward departure provision of the Guidelines. Instead, the district court used absolute language—"I don't have any alternative"—in denying sentencing relief other than to sentence at the low end of the range without a downward departure. When viewed in context, the district court's statement does not permit this court to conclude that the district court meant either that in good conscience it had no alternative or that it understood it had discretion under § 4A1.3 and chose not to exercise it.[3] That the district court also was interested in assuring that the defendant had a long period of incarceration in order to end her dependency on drugs is not inconsistent with a sentence that could be imposed after departing downward, *cf.*

2. For example, in *United States v. Webb*, 139 F.3d 1390 (11th Cir.1998), even after the district court concurred with the Assistant United States Attorney's attempt "to make sure the record is clear the court recognizes it has the authority to downwardly depart but chose not to do so," *id.* at 1392, the Eleventh Circuit concluded that the record was ambiguous and a remand was required. *Id.* at 1395. To the same effect is *United States v. Brown*, 903 F.2d 540, 544–45 (8th Cir.1990).

3. While the court is correct in noting that there are some cases in which a district court's claimed inability to depart reflects a recognition of departure authority accompanied by a judgment that the facts are insufficiently unusual to trigger exercise of that authority, this is not such a case. Here, the district court gave every indication that it

considered this to be a case worthy of a departure but that it saw no route available to reach that result. For this reason, the government's reliance on *United States v. Shark*, 51 F.3d 1072, 1077 (D.C.Cir.1995) (per curiam), is unavailing because the court there found no ambiguity in the district court's statement that it had no "leeway" to reduce a career offender's sentence under § 4A1.3 once the district court had rejected the defendant's arguments in support of his departure motion. Similarly, the court's analogy to *United States v. DeCosta*, 37 F.3d 5 (1st Cir. 1994), goes astray. In *DeCosta*, the district court sought briefing on its departure authority and expressed so clear an understanding of its authority that its subsequent reference to lacking the "discretion" to depart did not create an ambiguity. *Id.* at 8.

*Brown*, 903 F.2d at 544, and the government does not argue to the contrary.

Moreover, viewing the record as the court does, its concession that the record is "ambiguous," *see* Majority Opinion ("Maj. Op.") at 492, as to whether the district court recognized at the time it sentenced the defendant that § 4A1.3 "might provide authority for a downward departure" cannot be reconciled with its decision not to remand this case. Until today, the court had followed or acted consistently with the majority rule: "[i]f it cannot be determined whether the sentencing court exercised its discretion or wrongly believed it could not depart, the case will be remanded." JEFRI WOOD, FEDERAL JUDICIAL CENTER, GUIDELINE SENTENCING: AN OUTLINE OF APPELLATE CASE LAW ON SELECTED ISSUES 303 (1998).[4] However, two circuits have evinced a willingness to depart from this rule. *See United States v. Fortier*, 180 F.3d 1217, 1231 (10th Cir.1999); *see also United States v. Byrd*, 53 F.3d 144, 145 (6th Cir.1995). By essentially adopting the minority view as its holding, the court misconceives the inquiry. The court recognizes that our jurisdiction in this case turns on the merits, that is, whether "the record establishes that the district court judge misunderstood his departure authority." *See* Maj. Op. at 490. But where the record is ambiguous, this court is unable to determine whether the district court's decision is reviewable legal error or an unreviewable exercise of discretion. A rule that resolves the ambiguity against the defendant abdicates our responsibility to determine our own jurisdiction and is potentially unjust: "a defendant whose departure request is rejected with an ambiguous ruling based on legal grounds would apparently be deprived of the appellate review to which he is statutorily entitled." *Mummert*, 34 F.3d at 205 n. 2; *accord United States v. Clark*, 128 F.3d 122, 124 (2d Cir.1997); *cf. Koon v. United States*, 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); *United States v. Leandre*, 132 F.3d 796, 800 (D.C.Cir.1998).

The court mischaracterizes the majority rule as one that treats ambiguity as "reversible error." Maj. Op. at 491. Rather, the rule is designed to aid the court's jurisdictional inquiry by allowing the district court to clarify on resentencing whether its decision not to depart falls into the class of such decisions subject to our review under 18 U.S.C. § 3742. Contrary to the court's statement, our prior decisions have recognized that a remand to clarify an ambiguous record is consistent with our decision in *United States v. Pinnick*, 47 F.3d 434 (D.C.Cir.1995), which presumes, in the absence of record evidence indicating otherwise, that a district court's refusal to depart is for discretionary reasons. *See, e.g., United States v. Graham*, 83 F.3d 1466, 1481 (D.C.Cir. 1996); *see also United States v. Chase*, 174 F.3d 1193, 1195 (11th Cir.1999). The instant case falls outside the *Pinnick* presumption because the district court's statement—"I don't have any alternative"—is precisely the sort of record evidence that raises an ambiguity about the district court's grounds for decision, triggering application of the rule requiring a remand.

An additionally troubling aspect to the court's resolution of the ambiguity is its

---

4. *See, e.g., United States v. Spencer*, 25 F.3d 1105, 1113 (D.C.Cir.1994); *Beckham*, 968 F.2d at 53; *United States v. Barry*, 938 F.2d 1327, 1330–32 (D.C.Cir.1991); *United States v. Baskin*, 886 F.2d 383, 389–90 (D.C.Cir. 1989); *cf. United States v. Harris*, 959 F.2d 246, 264–65 (D.C.Cir.1992); *United States v. Molina*, 952 F.2d 514, 520 (D.C.Cir.1992); *United States v. Lopez*, 938 F.2d 1293, 1298 (D.C.Cir.1991) (citing *United States v. Deigert*, 916 F.2d 916, 918–19 (4th Cir.1990)); *United States v. Lyons*, 706 F.2d 321, 335 & n. 25 (D.C.Cir.1983). For cases from other circuits, see, e.g., *United States v. Webb*, 139 F.3d 1390, 1395 (11th Cir.1998); *United States v. Mummert*, 34 F.3d 201, 205 (3d Cir.1994); *United States v. Brown*, 985 F.2d 478, 481 (9th Cir.1993); *United States v. Ritchey*, 949 F.2d 61, 63 (2d Cir.1991); *United States v. Deigert*, 916 F.2d 916, 919 (4th Cir.1990); *see also United States v. Ramos–Oseguera*, 120 F.3d 1028, 1040–41 (9th Cir.1997), *cert. denied*, 522 U.S. 1135, 118 S.Ct. 1094, 140 L.Ed.2d 149 (1998).

assumption that the district court was insincere when expressing its "wish that there was some way [it] could give [the defendant] a sentence less than the Guidelines call for." Maj. Op. at 489. Even assuming that this language could be understood to have been intended only to "soften the blow," it is at least equally possible that the district court meant what it said. By resolving this ambiguity against the defendant, the court also deprives the district court of the opportunity to consider and explain clearly whether a departure under § 4A1.3 was warranted in the instant case. *Cf. United States v. Rivers*, 50 F.3d 1126, 1132 (2d Cir.1995).

Of course counsel share some responsibility for any ambiguity in the record. Directing the district court's attention to the precise relief sought under the specific Guideline would avoid future ambiguity. Not only could defense counsel have been more specific, the prosecutor also could have sought clarification of the district court's ruling. But after *Beckham*, it is clear that no magic words are required, not even the invocation of the phrase "downward departure." In *Beckham*, defense counsel's arguments for a lesser sentence were unavailing. So too, here, counsel's argument that the defendant's two prior convictions should be viewed as related was unavailing. In *Beckham*, defense counsel neither referred to § 4A1.3 nor, as here, invoked language of its commentary. Indeed, defense counsel in *Beckham* disclaimed the possibility of other relief under the Guidelines.

Still, counsel's argument here adequately preserved the defendant's right to review. Counsel objected to application of the career offender enhancement because Criminal History Category VI "do[es] not accurately reflect the defendant's actual criminal history but artificially inflate[s] her record and offense level." Elaborating

that the career offender provision did not apply because the defendant's two prior drug convictions should be treated as related, counsel's invocation of "artificial[ ] inflat[ion]" of the defendant's criminal record closely tracks § 4A1.3's authorization of a departure when the "defendant's criminal history category significantly overrepresents the seriousness of a defendant's criminal history...." U.S. SENTENCING GUIDELINES MANUAL § 4A1.3 (1997). While admittedly inartful, defense counsel's objection sufficiently placed the district court on notice that resort to its discretion under § 4A1.3 was being sought. Nothing like this happened in *Pinnick*, 47 F.3d at 439, where counsel failed to object at all to the district court's denial of his request for a departure. If defense counsel's argument here had been limited to whether the career offender provision could be applied to the defendant as a matter of law, counsel's objection to Category VI failing to "accurately reflect" the defendant's true criminal history would have been irrelevant. *Cf. DeCosta*, 37 F.3d at 8. Similarly, defense counsel raised the other ground for a § 4A1.3 departure—the unlikelihood of recidivism—when arguing that the bottom of the Guidelines range was too long. In the absence of § 4A1.3, that argument also would have been irrelevant.[5] Thus, even in the absence of our decision in *Beckham*, defense counsel's argument was sufficient to alert the district court that a downward departure was being requested.

Had the defendant waived her objection to the district court's failure to depart, I would agree with the court that plain error review remains for a waived objection. Maj. Op. at 491; *see United States v. Albritton*, 75 F.3d 709, 714 (D.C.Cir.1996) (Rogers, J., concurring). But the court fails to heed the instruction in *Saro* that in matters of sentencing, even under plain

---

5. The court characterizes counsel's argument against the low end of the guideline range as a plea for "leniency," Maj. Op. at 490, without acknowledging that because the district court had previously announced its intent to sentence at the low end of the range the only possible exercise of leniency left to the court would have been a downward departure under § 4A1.3.

error review, it is important to be certain that the district court understood its authority and, as appropriate, exercised its discretion under that authority. 24 F.3d at 288. Where a district court states that it has no alternative to imposing the lowest sentence based on a criminal history category VI, in response to defense counsel's argument for a sentence that does not so overstate the defendant's prior criminal record, this court needs to be clear that the district court understood that § 4A1.3 "might provide authority" for a lesser sentence. *Beckham*, 968 F.2d at 55. Accordingly, because the systemic costs of a remand for resentencing do not outweigh (and the government does not argue to the contrary) the criminal justice system's interest in assuring correct application of the Guidelines, I would remand the case in accord with circuit precedent to allow the district court to consider whether to grant a downward departure under § 4A1.3.